Jack VOLK, plaintiff,

v.

MULTI–MEDIA, INC., defendant.

No. C–1–79–138.

United States District Court,
S. D. Ohio, W. D.

Feb. 19, 1981.

Gregory T. Hughes, Fort Mitchell, Ky., for plaintiff.

James K. L. Lawrence, Michael F. Haverkamp, and James J. Grogan of Frost & Jacobs, Cincinnati, Ohio, for defendant.

## OPINION

DAVID S. PORTER, Senior District Judge:

This is an action brought pursuant to the Age Discrimination in Employment Act [ADEA]. 29 U.S.C. §§ 621–634. Now before us is defendant's motion to dismiss for lack of subject matter jurisdiction and for summary judgment (doc. 8). Fed.R.Civ.P. 12(d), 56. Defendant claims that plaintiff did not file notice with the government of his intent to sue defendant within 180 days of the alleged discriminatory act as required by the ADEA. 29 U.S.C. § 626(d). Memoranda in support, opposition, and reply were filed (docs. 8, 10, 11). A hearing on the motion was held January 14, 1981. From the evidence and argument presented at the hearing we make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff was terminated on May 30, 1978, at age 59, after 24 years of service with defendant as a studio musician (a drummer) for various television programs. He was given twelve weeks severance pay, four weeks vacation pay, and two weeks pay in lieu of notice, but he did not work for defendant after May 30. He was, understandably, in a state of shock after the termination because he was not at all expecting it. After a few weeks he surmised that his termination might have been due to his age. In a discussion with an attorney friend some weeks after his termination he learned that he might be able to pursue an age discrimination claim.

Sometime before October 4, 1978 plaintiff telephoned another attorney, Meredith L. Lawrence, regarding a possible age discrimination claim. On October 4 he met with Meredith Lawrence. On October 31 they met again and entered into a retainer agreement. Plaintiff did not recall whether he was aware of the 180 day requirement at the time he retained Meredith Lawrence.

At the time the retainer agreement was signed, Meredith Lawrence was not aware of the 180 day notice requirement. He testified that prior to this action he had served as local counsel in another age discrimination case, but had not become familiar with ADEA requirements in that role. Within a few days of being retained by plaintiff in this action, Meredith Lawrence visited the Cincinnati Office of the Department of Labor and obtained two documents dealing with age discrimination. One was a pamphlet entitled "Age Discrimination in Employment Act—40–65" (dx 5a). The pamphlet describes rights under the ADEA and on page 2 specifically states:

Before an individual brings a court action, he must give the Secretary not less than 60 days' notice of his intention.

This notice must be filed within 180 days of the occurrence of the alleged unlawful practice...

The other document was a copy of the ADEA in its uncodified form (dx 5b). Section 7(d) states:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Secretary. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred...

Meredith Lawrence read both of these documents shortly after obtaining them. On November 7, 1978 he telephoned the Cincinnati Office of the Department of Labor and spoke with either Margaret Schott or Robert Peter regarding plaintiff's situation and what procedures might be appropriate. At the time, Schott and Peter were compliance officers with the Department of Labor who were specifically concerned with enforcement of the ADEA. Schott and Peter testified that, while they could not specifically recall Meredith Lawrence's inquiry, their practice at that time was to inform persons inquiring about the Age Discrimination Act of the 180 day notice requirement and to inform them that the necessary notice should be sent to either the Cincinnati or Washington, D. C., office of the Department of Labor.

Meredith Lawrence testified that from his reading of the pamphlet and the statute, and from his discussions with the Department of Labor compliance officers, he understood that there was a notice requirement but did not understand the requirement to mean that a writing had to be presented to any particular office or person. He testified that he thought his telephone discussions with the compliance officers were sufficient to meet the notice requirement.

In a letter to defendant dated November 7, 1978 Meredith Lawrence stated that he had been retained by plaintiff and would file an age discrimination action if the situation was not remedied (dx 1). The letter was received by Carl Weiner, Vice President of defendant Multimedia, Inc., on November 9th. Weiner referred it to defendant's legal counsel at the Frost & Jacobs law firm in Cincinnati. Frost & Jacobs' attorney James Lawrence contacted Meredith Lawrence regarding the case on November 15. The two attorneys talked again on November 22nd, 27th, and 29th; their conversation included discussion of settlement possibilities.

In a letter to the Department of Labor in Washington, D. C., dated November 27, 1978, Meredith Lawrence stated that he was giving notice pursuant to the ADEA that plaintiff would bring a civil action. Meredith Lawrence testified that he typed the letter himself and at the time had a policy of mailing letters the same day they were dated. He said he would have deposited the letter in the collection box at the Ludlow, Kentucky, Post Office.

Francis V. LaRuffa, Jr., who in 1978 was the chief of the Age Discrimination Branch of the U. S. Department of Labor, testified that the letter dated November 27 was received at the Department of Labor on December 23, 1978 and was referred to his branch on January 9, 1979. In a letter dated January 16, 1979 (dx 3) LaRuffa responded to Meredith Lawrence's letter. In his letter LaRuffa noted that Meredith Lawrence's letter was dated November 27, 1978 but was postmarked December 21, 1978. LaRuffa went on to explain the responsibilities of the Department of Labor under the ADEA. These responsibilities included notification of the prospective defendant and making an effort to conciliate the dispute. LaRuffa said he would refer Meredith Lawrence's letter to the Cincinnati Office of the Department of Labor for appropriate action.

Edward Bird, operations manager for the Cincinnati branch of the U. S. Postal Service, testified that a letter picked up in Ludlow, Kentucky, on November 27, 1978, would not have been delivered in Washington, D. C., any earlier than November 29, 1978. He said that while it is possible that a letter could become lost within the postal system for a period of time and then

later delivered to the designated address, the likelihood of such an occurrence is very low. He further testified that in the case of a delivery that is delayed for any unreasonable period of time, the policy of the Postal Service is to return the letter to the sender with an explanation of what had happened.

Exactly when the letter dated November 27, 1978 was mailed and exactly when it was received cannot be firmly established from the record before us. We are not willing to give much credit to the scenario presented by Meredith Lawrence. First, he was not able to give any plausible explanation for sending the letter. If he indeed felt that the Department of Labor had already been given notice, then there would be no reason to send the letter. Second, if he intended the letter to suffice for the statutory notice, then he should have, as we think most attorneys would, sent the letter by certified mail.

The evidence regarding the mailing and receipt of the letter dated November 27, 1978 could be found to create a suspicion that it was sent sometime after November 27 but antedated as an artifice to indicate that the 180 day filing requirement had been met. Rather than attempt to confirm or deny this suspicion, we will find only that a preponderance of the evidence relating to the mailing of the letter dated November 27 shows that it was not received by the Department of Labor in Washington, D. C. before November 29, 1978 and that it was not acted upon by the Department of Labor until December 23, 1978.

The evidence shows that conferences and settlement negotiations regarding this case continued after November 27, 1978. As noted above, Meredith Lawrence and James Lawrence pursued settlement discussions after that date. Sometime in December, 1978 Carl Weiner telephoned plaintiff and made a settlement offer. Robert Peter, the Department of Labor compliance officer assigned to plaintiff's case, testified that he received the notice letter on January 19, 1979 and that his practice was to contact an accused employer within two weeks of receiving a notice to set up a conciliation conference. Peter did not meet with Carl Weiner and other officers of Multimedia until March 5, 1979. Peter testified that he could not recall why the conciliation conference was delayed. Peter said that, while he concluded at the time that conciliation of the dispute would not be possible, his effort at conciliation was in no way prejudiced by the delay in notification to the Department of Labor or the delay in meeting with officers of defendant. Carl Weiner testified that defendant was not prejudiced by the apparent delay.

## CONCLUSIONS OF LAW

■ In *Wright v. State of Tennessee*, 628 F.2d 949 (1980) [*Wright II*], the Sixth Circuit held that the 180 day notice requirement of the ADEA is a "jurisdictional prerequisite" but not a "jurisdictional requirement." The effect of this holding is that failure to comply with the notice provision does not necessarily deprive a District Court of the power to entertain a claim under the ADEA. *Id.* at 953. The 180 day period is subject to modification, that is tolling for equitable reasons. *Id.*

In making this holding the Court overruled its decisions in *Hiscott v. General Electric Company*, 521 F.2d 623 (6th Cir. 1975), *Eklund v. Lubrizol Corp.*, 529 F.2d 247 (6th Cir. 1976), and *Rucker v. Great Scott Supermarkets*, 528 F.2d 393 (6th Cir. 1976). In relaxing its view of the notice provision of the ADEA the Sixth Circuit put itself in step with other Circuits which have considered the matter. *Wright II*, 628 F.2d at 952–953. This change was foreshadowed by the dissent of Judge McCree in *Eklund v. Lubrizol Corp., supra*, which said that the ADEA "should not be construed to make it a trap for the unwary, nor should it require every claimant to retain counsel experienced in the technicalities of age discrimination litigation." 529 F.2d at 251.

■ The Sixth Circuit's recognition of the notice provisions of the ADEA as jurisdictional prerequisites is important to the case before us because it is obvious that the

required notice was not filed within 180 days of the alleged discriminatory incident. Plaintiff was terminated on May 30, 1978 and because he did not work for defendant at any time after his termination that date must be considered the date on which the alleged unlawful practice occurred. *See Delaware State College v. Ricks*, —— U.S. ——, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). We consider it obvious from the language of the ADEA that "charge" means something in written form and that "filing" means putting the notice into the possession of an officer of the Department of Labor. *See* Fed.R.Civ.P. 3; *Freeman v. Giacomo Costa Fu Andrea*, 282 F.Supp. 525 (E.D.Pa. 1968); *Robinson v. Waterman S.S. Co.*, 7 F.R.D. 51 (D.N.J.1947). The content of the letter from Meredith Lawrence to the Department of Labor dated November 27, 1978 is sufficient to constitute "charge" under 29 U.S.C. § 626(d). As noted above, however, it could not have been delivered to the Department of Labor before November 29, 1978. Therefore notice was "filed" at least 183 days after the alleged unlawful practice occurred.

Having concluded that the notice was filed late, our next inquiry is whether equitable considerations dictate tolling of the notice period until the notice was actually filed.

In *Wright II* the Sixth Circuit did not actually determine whether the facts before it would support equitable tolling, rather the Court remanded the case for that determination and suggested that the factors for equitable tolling set out in *Abbott v. Moore Business Forms, Inc.*, 439 F.Supp. 643 (D.N. H.1977), be considered. 628 F.2d at 953.

*Abbott v. Moore Business Forms, Inc.* concerned a motion to dismiss a plaintiff's age discrimination claim because he had not filed notice with the Labor Department until 21 months after the alleged discriminatory practice. In determining that the applicable notice period should be tolled on the facts before it, the Court considered five equitable factors:

1. Lack of actual notice;

2. Lack of constructive knowledge, *e. g.*, as when one has secured an attorney, who is thereby charged with presumptive knowledge of the law's requirements;

3. Diligence in pursuing one's rights;

4. Absence of prejudice to defendant; and

5. Plaintiff's reasonableness in remaining ignorant of the notice requirement.

Weighing only these factors in the case before us, we cannot conclude that equitable tolling is either called for or absolutely precluded. It is not clear that plaintiff had actual notice of the 180 day filing provision, but it is clear that he retained an attorney about four weeks before the 180 day mark. Thus he had "constructive" knowledge, for as the *Abbott* Court correctly stated, an attorney is "charged with presumptive knowledge of the law's requirements." 439 F.Supp. at 646. Plaintiff himself was as diligent as he needed to be in that he personally found out about the ADEA and hired an attorney to look into the matter for him, all prior to the running of the 180 day period. Plaintiff's attorney, who effectively stood in plaintiff's shoes after being retained, however, was less than diligent. While he took steps on plaintiff's behalf by contacting Department of Labor personnel, his failure to file required notice on time was the antithesis of diligence. Furthermore, there is no excuse for the attorney's ignorance of the notice requirement.

On the other hand, defendant was not prejudiced by the delay of the filing. The delay was, at the most, about four weeks. Defense counsel suggests that this delay had two prejudicial effects. First, that the liability in this case, if found, would be for back wages which increased every day until judgment. Second, that with the passing of time recollections of the events leading to plaintiff's discharge would be lost. We agree that the passage of time would increase potential liability and fade memories. But we doubt that in this case these two facts amount to prejudice. We note that defendant and its counsel continued to pur-

sue settlement and conciliation discussions after November 27, 1978, obviously not concerning themselves with the notice requirement. Carl Weiner, of course, testified that defendant was not prejudiced by the delay. The conciliation process sponsored by the Department of Labor was apparently delayed in this case, a fact that should not be held against the plaintiff. Fading memories are always a problem. But we doubt that a delay of four weeks will make much difference in a case that has gone on for more than two years.

In sum, weighing the equitable factors laid out in *Abbott* we find the scales fairly evenly balanced. While defendant would not be prejudiced if tolling were allowed, plaintiff, because he was working through his attorney, had adequate time to file his notice on time.

■ We are not satisfied, however, that the equitable factors outlined in *Abbott* are the only ones that should be taken into account in this case. We find ourselves in a situation where a plaintiff with a plausible claim may not be able to fully litigate that claim because of the sloppy, inept practice of his attorney. The additional equitable consideration we find applicable in this case is whether the errors of plaintiff's counsel are of the type that should require us to visit the consequences of those errors upon the client. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979); *see Carter v. City of Memphis, Tennessee*, 636 F.2d 159 (6th Cir. 1980).

■ While we in no way condone or encourage this type of practice, we do not feel that it should interfere with plaintiff's prosecution of his claim. Weighing together the equitable factors outlined in *Abbott* and the additional factor of attorney error, we find the scales to be tipped in favor of equitable tolling in this case.

We should note that we consider the question to be a very close one. If it had been a situation where the attorney did nothing for an extended period of time, *see Edwards v. Kaiser Aluminum*, 515 F.2d 1195, 1200, n. 8 (5th Cir. 1975), or had

proceeded in an intelligent and reasonable manner, *see Eklund v. Lubrizol Corp.*, 529 F.2d at 251 (J. McCree dissenting), then the outcome might have been different. But in this case the attorney's error was the product of ineptness and sloppiness and we do not think his client should have to suffer because of it. *See, Carter v. City of Memphis, Tennessee, supra*, 636 F.2d at 161.