**Doris JACOBSON, Plaintiff,**

v.

**PITMAN-MOORE, INC., a corporation, and Johnson & Johnson, Inc., a corporation, Defendants.**

No. Civ. 4–82–1186.

United States District Court, D. Minnesota.

Oct. 24, 1983.

Karla R. Wahl, and Bruce Johnson, Minneapolis, Minn., for plaintiff.

William Z. Pentelovitch, Howard B. Tarkow, Maslon, Edelman, Borman & Brand, Minneapolis, Minn., and Michael G. Cleveland and Marion C. Haney, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This employment discrimination case is before the Court on the defendants' motion for summary judgment. The Court previously granted summary judgment in favor of the defendants on six of the eight counts in the plaintiff's amended complaint. The defendants now seek summary judgment on the plaintiff's two remaining claims brought under the Equal Pay Act, 29 U.S.C. § 206, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, respectively.

FACTS

The plaintiff Doris Jacobson, age 51, was employed in the Minneapolis, Minnesota branch of the defendant Pitman-Moore, Inc. (PMI), a subsidiary of the defendant Johnson & Johnson, Inc., from March 13, 1972, until April of 1981 when her employment was terminated. Jacobson, an assistant branch manager at PMI, was one of two permanent employees in the Minneapolis branch. The other employee was the branch manager, Robert Hanlin.

Jacobson's dismissal followed a reorganization of PMI in which the Minneapolis branch was closed and consolidated into the Des Moines, Iowa branch. Jacobson was told that she would not be transferred to Des Moines because her job was being phased out. Hanlin, Jacobson's supervisor, was transferred. He was 54 years old at the time and had 31 years of seniority with PMI, as opposed to Jacobson's nine years.

Jacobson claims that her job was not, in fact, phased out, but that a younger and less experienced male was hired to perform the same duties under a different job title after her discharge.

In her Equal Pay Act claim, Jacobson alleges that during her tenure with PMI she was paid less than male employees of PMI even though she performed equal work. In her ADEA claim, Jacobson alleges that PMI discriminated against her on the basis of her age by failing to transfer her to the Des Moines office and by discharging her just prior to the vesting of her pension rights.

## DISCUSSION

 A defendant is not entitled to summary judgment unless the defendant can show that no genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). Summary judgment is an extreme remedy that should not be granted unless the moving party has established a right to judgment with such clarity as to leave no room for doubt and unless the nonmoving party is not entitled to recover under any discernible circumstances. *E.g., Vette Co. v. Aetna Casualty & Surety Co.,* 612 F.2d 1076, 1077 (8th Cir.1980). In considering a summary judgment motion, a court must view the facts most favorably to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Unlaub Co. v. Sexton,* 568 F.2d 72, 76 (8th Cir.1977). The nonmoving party may not merely rest upon the allegations or denials of the party's pleading, but must set forth specific facts by affidavits or otherwise showing that there is a genuine issue for trial. *Burst v. Adolph Coors Co.,* 650 F.2d 930, 932 (8th Cir.1981).

### A. Equal Pay Act

The Equal Pay Act, 29 U.S.C. § 206, states in relevant part:

(d)(1) No employer having employees subject to any provisions of this section shall discriminate, *within any establishment* in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

(Emphasis added). The key word for purposes of this motion is "establishment." PMI contends that "establishment" means each physically separate place of business. Therefore, for purposes of the Equal Pay Act, PMI argues that Jacobson can compare her salary only to the salary of other employees in the Minneapolis office. The only other permanent employee in the Minneapolis office was Robert Hanlin, the manager, who earned approximately $20,000. Jacobson, the assistant manager, earned $13,000. Since Jacobson can compare her job only to Hanlin's job, and since Jacobson admitted in her deposition that Hanlin's job involved more responsibilities than hers (*i.e.,* the jobs were not equal), PMI contends that the Equal Pay Act has no applicability in this case and that Count II must therefore be dismissed.

Jacobson denies that "establishment" should be given the meaning advocated by PMI. Jacobson contends that she is entitled under the Equal Pay Act to compare her salary with the salaries of PMI employees doing equal work in geographically scattered PMI offices. Jacobson submits that her average weekly salary as an assistant manager was less than the average weekly salaries of employees in other branches performing similar work. She also compares her $13,000 per year salary to the $20,000 salary of her supervisor Hanlin. Based on these comparisons, Jacobson argues that a prima facie violation of the Equal Pay Act has been shown.

Jacobson's expansive interpretation of the term "establishment" is flatly contra-

dicted by the administrative regulations implementing the Equal Pay Act. These regulations clearly define "establishment" as "each physically separate place of business":

> Although not expressly defined in the [Equal Pay] Act, the term "establishment" has a well settled meaning in the application of the Act's provisions. *It refers to a "distinct physical place of business" rather than to "an entire business or enterprise" which may include several separate places of business.* This is consistent with the meaning of the term as it is normally used in business and in government, is judicially settled and has been recognized in the Congress in the course of enactment of amendatory legislation .... Each physically separate place of business is ordinarily considered a separate establishment. *For example, where a manufacturer operates at separate locations a plant for production of its goods, a warehouse for storage and distribution, several stores from which its products are sold, and a central office for the enterprise, each physically separate place of business is a separate establishment.*

29 C.F.R. § 800.108 (1982) (emphasis added).

■ Applying this regulation, the Court finds that the Minneapolis branch of PMI was a separate establishment for purposes of the Equal Pay Act. Jacobson's assertion that the Minneapolis branch was part of an integrated production chain and was incapable of operating independently of the other branches is neither relevant nor supported by any facts in the record.

■ Since the Minneapolis branch was a separate establishment, Jacobson can compare her salary only to that of her supervisor Hanlin, who was the only other permanent employee in the Minneapolis office.[1] Such a comparison fails to reveal any violation of the Equal Pay Act because Jacobson and Hanlin did not perform equal work. Jacobson admitted in her deposition that Hanlin was her supervisor. Deposition of Doris Jacobson, July 5, 1983, at 12. She also admitted that Hanlin's job duties exceeded hers in certain ways. For example, Hanlin had the responsibility for hiring temporary employees and was the ultimate supervisor of those employees. *Id.* at 17–18. Although Jacobson may have filled in for Hanlin on occasion during his absence, that does not mean that she and Hanlin performed equal work. The Court concludes that Jacobson has failed to establish a basis for her Equal Pay Act Claim.

## B. ADEA

### 1. EEOC filing.

PMI first contends that Jacobson's ADEA claim must be dismissed because Jacobson failed to file a claim of discrimination with the Equal Employment Opportunity Commission (EEOC) within 300 days of the date of her discharge as required by law. 29 U.S.C. § 626(d). Jacobson filed a statement of discrimination with the EEOC on August 25, 1982, and filed a formal charge one month later. Both of these filings were well beyond the 300-day limit. Jacobson responds that the circumstances of this case require that the limitations period be equitably tolled.

■ Filing a timely charge with the EEOC "is not a jurisdictional prerequisite to suit in federal court, but a requirement

---

1. Even if Jacobson could validly compare her salary to the salaries of employees in other branches, she has provided no evidence that any such employees were paid more than she was paid for performing equal work. Jacobson has provided a document purporting to show that two order processors in the Kansas City branch were paid more than she was paid for performing work requiring less skill than her job required. The document actually reveals that these two individuals were paid less than Jacobson.

Jacobson's contention that PMI has failed to provide legitimate discovery information regarding salaries is unpersuasive. PMI's counsel stated at oral argument that PMI has provided all requested material pursuant to an order of the United States Magistrate. Jacobson's counsel has not refuted that statement.

that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). An employer's failure to post notices of employees' rights under the ADEA as required by statute, 29 U.S.C. § 627, tolls the limitations period until the employee acquires actual notice of his or her rights. *Kephart v. Institute of Gas Technology*, 581 F.2d 1287 (7th Cir.1978), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

In this case, based upon PMI's admission that it is unable to prove that the required notices were posted at the Minneapolis branch, the Court must assume that no such notices were posted. Since Jacobson states in her affidavit that she did not acquire actual knowledge of the need to file with the EEOC until August 20, 1982, Affidavit of Doris Jacobson, Aug. 9, 1983, at 1, ordinarily equitable tolling would apply.

This case is complicated, however, by the fact that Jacobson consulted Attorney Bruce Johnson in June of 1981 concerning her discharge, well within the 300-day limitations period. Unfortunately, Johnson failed to inform Jacobson of the need to file a claim with the EEOC. Affidavit of Bruce Johnson, Aug. 29, 1983. Jacobson did not learn of the filing requirement until August 20, 1982 when she met with her present attorney, Karla Wahl. The defendants contend that Jacobson's consultation with Johnson eliminates any basis for equitable tolling because constructive knowledge of the filing requirement was thereby imputed to Jacobson.

Courts are split over whether consultation with an attorney during the limitations period eliminates the basis for equitable tolling. PMI has cited ten cases in support of its position. The language in several of these cases is mere dictum, however. *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983); *Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 72–73 (1st Cir.1982); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 193 (3d Cir.1977), cert.

denied, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1200 n. 8 (5th Cir.1975). Jacobson has cited three cases in support of her position that consultation with an attorney does not necessarily eliminate the basis for equitable tolling. *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir.1976), aff'd by an equally divided court, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977); *Volk v. Multi-Media, Inc.*, 516 F.Supp. 157, 162 (S.D.Ohio 1981); *Wagner v. Sperry Univac*, 458 F.Supp. 505, 514–15 (E.D.Pa.1978) (dictum), aff'd mem., 624 F.2d 1092 (3d Cir.1980).

■ The Court has closely examined all of the relevant case law and holds that, under the particular circumstances of this case, equitable tolling is appropriate for several reasons. First, the cases reveal that courts tend to impute constructive knowledge of the EEOC filing requirement to an unknowing plaintiff based on the plaintiff's consultation with an attorney only when the attorney-client relationship is of some significant duration. For example, in *Keyse v. California Texas Oil Corp.*, 590 F.2d 45 (2d Cir.1978) (per curiam), the court held that, since the plaintiff had had the assistance of counsel, equitable tolling was inappropriate. 590 F.2d at 47. But, the court went on to note that the attorney-client relationship was a continuing one during the limitations period. 590 F.2d at 47 n. 2. The court distinguished *Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir.1976), aff'd by an equally divided court, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977), which held that a plaintiff's consultation with an attorney did *not* preclude equitable tolling, on the ground that the attorney contact in *Dartt* was no more than a "preliminary approach ... as to possible consultation." 590 F.2d at 47 n. 2. Similarly, in *Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170, 1173 (D.Mass. 1983), equitable tolling was held to be inapplicable where the plaintiffs' counsel had been "closely monitoring" the progress of the plaintiffs' case for two years prior to

the expiration of the limitations period.[2] In *Sanders v. Duke University*, 538 F.Supp. 1143, 1146 n. 2 (M.D.N.C.1982), equitable tolling was denied where the plaintiff had been represented by counsel for a full year before filing his EEOC charge. These cases demonstrate that the duration of the attorney-client relationship, not merely the existence of such a relationship, is the key factor in determining whether equitable tolling should apply.

In this case, Jacobson's contact with Attorney Johnson in June of 1981 appears to have been quite limited, perhaps a single office consultation. It does not appear that Jacobson had an ongoing attorney-client relationship with anyone until she retained Wahl more than a year later. It is also undisputed that Johnson did not inform Jacobson of the need to file with the EEOC. It would be unfair and contrary to the remedial purpose of the ADEA to impute constructive knowledge of the EEOC filing requirement to Jacobson based on such a fleeting and unproductive attorney-client relationship.

A second equitable factor in Jacobson's favor is that she did not sleep on her rights. She sought out an attorney within two months of being discharged. Having acted to protect her rights, she should not be penalized for her attorney's failure to properly advise her. At least one district court has refused to penalize a plaintiff for the "sloppy, inept practice of his attorney." *Volk v. Multi-Media, Inc.*, 516 F.Supp. 157, 162 (S.D.Ohio 1981). Another court has suggested, in dictum, that an attorney's blunders may not be chargeable to the client. *Wagner v. Sperry Univac*, 458 F.Supp. 505, 514–15 (E.D.Pa.1978), *aff'd mem.*, 624 F.2d 1092 (3d Cir.1980). Upon receiving actual notice of the filing requirement, Jacobson promptly filed a statement of discrimination with the EEOC. Jacobson has not lacked diligence in pursuing her claim.

A third equitable consideration is prejudice to the defendant. *Volk v. Multi-Me-dia, Inc.*, 516 F.Supp. 157, 162 (S.D.Ohio 1981). *But see, Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170, 1174 (D.Mass. 1983) (defendants are not required to show prejudice to prevent tolling where plaintiff has consulted counsel). Here, the defendant has failed to allege any prejudice to it from Jacobson's untimely filing. Ordinarily, the prejudice alleged is the problem of witnesses' fading memories caused by the extra delay resulting from an untimely filing. *See, e.g., Volk*, 516 F.Supp. at 161. In this case, Jacobson's filing occurred about six months after the limitations period would have expired. This extra delay will not severely prejudice the defendant.

Finally, it must be emphasized that PMI failed to post notices of employees' rights under the ADEA as required by law. Since PMI's own misconduct was a cause of Jacobson's ignorance of the filing requirement, it would be inequitable to strictly enforce the limitations period against Jacobson.

For the above reasons, the Court holds that equitable tolling is appropriate and that Jacobson's ADEA claim is not barred.

2. *Disputed material facts.*

 In order to demonstrate a prima facie case of age discrimination, Jacobson must show that: 1) she was in the protected age group; 2) she was performing adequately in her job; 3) she was nevertheless discharged; 4) her employer thereafter hired someone else to perform the same work. *Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 290 (8th Cir.1982). Jacobson's ultimate burden is to demonstrate that age was a factor which made a difference in the employment decision. *Tribble v. Westinghouse Elec. Corp.*, 669 F.2d 1193, 1196 (8th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1767, 76 L.Ed.2d 342 (1983).

 The dispute in this case centers on the fourth factor. PMI contends that Jacobson was discharged during the compa-

2. *Leite* involved the three-year statute of limitations for filing a court action under the ADEA rather than the 300-day limit for filing a claim of discrimination with the EEOC.

ny's reorganization because the position of assistant manager was abolished. Jacobson maintains that the position was abolished in name only and that a younger, less experienced person took over her job duties under a different job title. Jacobson's contention is supported by the affidavit of Robert Hanlin, albeit in a rather conclusory fashion. Affidavit of Robert Hanlin, Aug. 9, 1983, at 3. Hanlin was the manager of the Des Moines branch after the reorganization and was in a position to know whether Jacobson's former duties were being performed by other employees. This crucial factual dispute cannot properly be resolved on summary judgment.

There is also a dispute over the defendant's excuse for not transferring the plaintiff to Des Moines. PMI claims that Jacobson was not transferred because she did not offer to pay her moving expenses. Contradicting her deposition testimony, Jacobson claims in her affidavit that she did offer to pay her moving expenses, although she does not say to whom she made this offer. Affidavit of Doris Jacobson, Aug. 9, 1983, at 2. Admittedly, Jacobson's affidavit lends only weak support to her claims, and, indeed, is somewhat suspect. On the other hand, PMI's reliance on Jacobson's failure to offer to pay her moving expenses as an excuse for discharging her seems pretextual. One wonders why, if the defendants were acting in a nondiscriminatory manner towards Jacobson, they did not ask her if she would be willing to pay her own moving expenses rather than waiting for her to volunteer to do so.

Since material facts are in dispute, summary judgment is unwarranted.

Accordingly, IT IS ORDERED that the defendants' motion for summary judgment on the plaintiff's Equal Pay Act claim (Count II of the second amended complaint) is granted.

IT IS FURTHER ORDERED that the defendants' motion for summary judgment on the plaintiff's Age Discrimination in Employment Act claim (Count III of the second amended complaint) is denied.