Doris JACOBSON, Plaintiff,

v.

PITMAN–MOORE, INC., a corporation, and Johnson & Johnson, Inc., a corporation, Defendants.

Civ. No. 4–82–1186.

United States District Court, D. Minnesota, Fourth Division.

March 12, 1984.

Karla R. Wahl, Minneapolis, Minn., for plaintiff.

Rebecca Palmer and Howard B. Tarkow, Maslon, Edelman, Borman & Brand, Minneapolis, Minn., and Michael G. Cleveland, Joseph D. Luksch, and Marion C. Haney, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This age discrimination case is before the Court on the defendants' motion for judgment notwithstanding the verdict or, alternatively, for a new trial. After a four-day trial in November of 1983, the jury returned a verdict for the plaintiff, and on January 17, 1984, the Court entered judgment.

### FACTS

The plaintiff Doris Jacobson, age 51, was employed in the Minneapolis, Minnesota branch of the defendant Pitman-Moore, Inc. (PMI), a subsidiary of the defendant Johnson & Johnson, Inc. from March 13, 1972, until April of 1981 when her employment was terminated. The Minneapolis branch office was engaged in selling veterinary supplies to clinics, hospitals, and veterinarians. Plaintiff, an assistant branch manager at PMI, was one of two permanent employees in the Minneapolis branch. The other was the branch manager, Robert Hanlin.

Plaintiff's dismissal followed a reorganization of PMI in which the Minneapolis branch, along with two other branches located in Kansas City, Missouri and Broadview, Illinois, was closed and consolidated into the Des Moines, Iowa branch. Plaintiff was told that she would not be transferred to Des Moines because her job was being phased out. Plaintiff claims that her job was not, in fact, phased out, but that a younger and less experienced person was hired to perform the same duties under a

different job title after her employment was terminated.

PMI's Minneapolis, Kansas City, and Broadview branches accepted and processed orders received directly at the branch or those submitted by PMI's sales representatives. Plaintiff was under the direct supervision of Hanlin, the Minneapolis branch manager. Hanlin was under the supervision of Frank Ruggeri, PMI's national distribution manager. During the time period pertinent to this action, PMI was divided into two divisions—sales and distribution. Both plaintiff and Hanlin were part of the distribution division.

Plaintiff testified that her duties as an assistant branch manager consisted of writing orders and replacement orders, picking and packing orders, occasionally receiving shipments, conducting inventories, preparing end of the month reports, and limited supervisory duties. The supervisory duties were not great since plaintiff and her immediate supervisor were the only permanent employees in the Minneapolis branch.

As part of the 1981 reorganization which involved the relocation of many employees, PMI had established a policy of paying the moving expenses of exempt employees [1] which included the branch managers, but not paying the moving expenses of non-exempt employees which included the assistant branch managers and order processors. Plaintiff was aware of this policy and informed both her immediate supervisor Hanlin and his immediate supervisor Ruggeri that she was willing to relocate, that she was willing to pay her own moving expenses, and that she would even be willing to go to Des Moines just to answer phones.

After Ruggeri told Hanlin that Hanlin would be the branch manager of the Des Moines branch, Hanlin told Ruggeri that he wanted plaintiff and two order processors [2] from the Kansas City branch, Richard Wimsatt and Tyrone Montague, both under 40 years of age, transferred to the Des Moines branch so that he would have some experienced people to start the operations in Des Moines. According to Jerry Vannocker, PMI's director of personnel, the two order processors from the Kansas City branch were transferred to the Des Moines branch because they had offered to pay their own moving expenses, and because no complaints about their work had come to his attention. In contrast, Vannocker testified that he refused to transfer plaintiff to Des Moines because the position of assistant branch manager was being abolished, PMI's policy was not to transfer non-exempt employees, and he had received complaints about plaintiff's work. [3]

The complaints Vannocker received about plaintiff's work came from Gene Heath, PMI's regional sales manager for the area including Minnesota, through a third party, PMI's national sales manager, Carry Roan. Heath testified that a number of his sales representatives had complained to him that plaintiff was not pleasant to customers, and that customers did not want to place orders with plaintiff. None of these complaints were ever put into writing, and plaintiff was never confronted with these complaints. One of the sales representatives, Larry Wright, who Heath stated had complained about plaintiff's work, testified that he thought plaintiff had done a good job, and that he had no complaints about her work.

In sum, during the 1981 reorganization, a total of three branches were closed. Among the five non-exempt employees affected by the reorganization, only three, plaintiff, Wimsatt and Montague, ex-

---

1. PMI defined exempt employees as those employees exempted from the payment of overtime according to the Fair Labor Standards Act.

2. An order processor had basically the same duties as the assistant branch manager except did not have supervisory duties over other employees.

3. Vannocker was responsible for approving all of PMI's personnel actions, including all transfers and terminations during the 1981 reorganization.

pressed a serious interest in being transferred to the Des Moines branch.[4]

On November 22, 1983, the jury returned its verdict finding that defendants willfully violated the Age Discrimination in Employment Act (ADEA). The jury also found that plaintiff sustained actual damages in the amount of $54,000.[5]

The defendants request that they be granted judgment notwithstanding the verdict, or in the alternative, a new trial (either on the whole case, or limited to the issue of damages) or that a reduction in the amount of damages be ordered. In addition, defendants request that the Court reconsider its decision to deny defendants' motion for summary judgment based upon plaintiff's failure to file a charge of age discrimination within the 300-day period established by the ADEA. Memorandum and Order reported at 573 F.Supp. 565 (D.Minn. 1983). In response, plaintiff argues that there is no basis for the Court reconsidering the equitable tolling issue, and there is no basis for a judgment notwithstanding the verdict or a new trial.

## DISCUSSION

### A. Equitable Tolling of ADEA Claim

Defendants urge the Court to reconsider its decision to deny plaintiff's motion for summary judgment based upon plaintiff's failure to file a charge of age discrimination within the 300-day period established by the ADEA. 29 U.S.C. § 626(d). The Court held that equitable tolling of the limitations period was proper even though plaintiff had consulted attorney Bruce Johnson during the limitations period, because the attorney-client relationship was not of a significant duration, 573 F.Supp. at 569–70, and because other equitable factors favored tolling, 573 F.Supp. at 570. Defendants contend that the Court should reconsider its decision because the time

sheets submitted by plaintiff's attorney, Karla Wahl, indicate that the attorney-client relationship between Johnson and plaintiff was of some significant duration.

■ The time sheets submitted show several contacts between Wahl and Johnson. But the contacts between Wahl and Johnson are not evidence of an attorney-client relationship between plaintiff and Johnson. In fact, defendants point to only one meeting in August of 1982 at which plaintiff, Johnson, and Wahl were all present and there is no evidence of any other meetings between Johnson and the plaintiff. The other discussions between Wahl and Johnson do not suggest plaintiff had discussions with Johnson about the case. In any event, the other equitable considerations discussed in the Court's memorandum—the plaintiff's prompt efforts to protect her rights, the defendants' failure to post notices of employees' rights as required by law, and the lack of prejudice to the defendants—fully justify the application of equitable tolling. Accordingly, the Court declines to alter its denial of defendants' motion for summary judgment.

### B. Judgment Notwithstanding the Verdict

■ A motion for entry of judgment notwithstanding the verdict can be granted " 'only where the evidence points *all one way* and is susceptible of *no* reasonable inferences sustaining the position of the nonmoving party.' " *Kayser v. Rockwell Graphic Systems, Inc.,* 666 F.2d 1233, 1235 (8th Cir.1982), *quoting Giordano v. Lee,* 434 F.2d 1227, 1231 (8th Cir.1970). The trial court must view the evidence in the light most favorable to the prevailing party and must assume that the jury resolved all conflicts in the evidence in favor of the prevailing party. *Harris v. Pirch,* 677

---

4. The other two non-exempt employees, Len Keller, expressed very little interest in being transferred to Des Moines according to a report prepared by an official at PMI, and Antonio Macasaet expressed an interest in being transferred to California, but not to Des Moines.

5. On January 17, 1984, the Court entered judgment in accordance with the jury's special verdict dated November 22, 1983. Plaintiff was also awarded an additional amount of liquidated damages equal to the amount the jury awarded plaintiff in actual damages, attorney's fees in the amount of $20,901.25, and costs in the amount of $1,200.

F.2d 681, 683 (8th Cir.1982); *Cleverly v. Western Electric Co.*, 594 F.2d 638, 641 (8th Cir.1979). If reasonable minds could differ as to the conclusion to be drawn from the evidence, the court must deny the motion. *Harris*, 677 F.2d at 683; *Cleverly*, 594 F.2d at 641.

In support of their motion for judgment notwithstanding the verdict, defendants argue that there is no evidence that age was a determining factor in plaintiff's termination. *Cleverly*, 594 F.2d at 641. In response, plaintiff asserts there is evidence supporting the jury's verdict.

■■■ In order to prevail in this action, plaintiff had to first establish a prima facie case. Plaintiff established her prima facie case by showing:

1. that she was between the age of 40 and 70;

2. that her employment was terminated;

3. that she was performing her job at a level that met her employer's legitimate expectations; and

4. that her work was reassigned to younger employees after her employment was terminated.

*See Halsell v. Kimberly-Clark Corp.*, 683 F.2d 285, 289–92 (8th Cir.1982), *cert. denied*, 459 U.S. 1205, 103 S.Ct. 1194, 75 L.Ed.2d 438 (1983).[6] Establishing a prima facie case, however, is not enough for a plaintiff to prevail in an age discrimination case where defendants articulate a legitimate non-discriminatory reason for deciding to terminate plaintiff's employment. *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014–15 (1st Cir.1979). In fact, plaintiff must establish that age was a factor that made a difference in defendants' decision. *Id.* In this action, defendants argued that plaintiff's employment was terminated because

the position of assistant branch manager had been abolished during the 1981 reorganization. In addition, as part of the 1981 reorganization, PMI had a policy of not transferring non-exempt employees, which included plaintiff, and Vannocker testified that he did not make an exception to the policy for plaintiff because he had heard complaints about her work.

■■■ Once the defendants offered legitimate nondiscriminatory reasons for the plaintiff's discharge, the plaintiff bore the burden of demonstrating that the stated reasons were pretextual. *Id.* The plaintiff met that burden. Evidence presented at trial established that the position of assistant branch manager was not completely abolished during the 1981 reorganization. Even if the position of assistant branch manager was abolished in name, Hanlin testified that Wimsatt, a person under 40 years of age, performed basically the same duties in the Des Moines branch after the reorganization as plaintiff performed in the Minneapolis branch before the reorganization even though Wimsatt's title was order processor.[7] Accordingly, the jury could have concluded that the defendants' alleged abolition of the position of assistant branch manager was merely a pretext for terminating plaintiff's employment.

Defendants also argued that they refused to transfer plaintiff because PMI had a policy of not transferring non-exempt employees. However, two non-exempt employees, Wimsatt and Montague, were transferred to Des Moines during the 1981 reorganization. According to Vannocker, PMI deviated from its policy of not transferring non-exempt employees in the cases of Wimsatt and Montague because Wimsatt and Montague had requested a transfer and offered to pay their own moving expenses, Hanlin requested that they be

---

6. Even though Vannocker testified that one of his reasons for not transferring plaintiff to Des Moines was that he had been told that plaintiff was doing a poor job, defendants conceded that plaintiff could adequately perform her job. Defendants contend that plaintiff has not established a prima facie case because plaintiff did not establish that she had been replaced by a younger individual. However, Hanlin, the branch manager in Minneapolis and Des Moines, testified that Wimsatt, a person younger than plaintiff, performed basically the same duties as plaintiff.

7. Wimsatt also had some supervisory duties at the Des Moines office.

transferred, and no complaints had been lodged against their work. Plaintiff also requested a transfer from her two immediate supervisors and offered to pay her own moving expenses.[8] In addition, Hanlin requested that plaintiff be transferred to Des Moines. Finally, the testimony about plaintiff's poor work performance was discredited by the five evaluations indicating plaintiff performed satisfactorily and the testimony of Wright, a person who allegedly complained about plaintiff's work, that plaintiff performed satisfactorily. The transfer of the two employees, both under 40 years of age, from the Kansas City branch to the Des Moines branch suggests that PMI was willing to transfer non-exempt employees even though there was a policy against transferring non-exempt employees during the 1981 reorganization. Accordingly, the jury could have concluded that defendants' reasons for terminating plaintiff's employment were pretextual because her situation did not differ significantly from that of Wimsatt and Montague.

■ If the reasons given by defendants for terminating plaintiff's employment were not pretextual, defendants argue that, since Vannocker testified he never met plaintiff or knew her age, there is no evidence to support the jury's finding that age made a difference in defendants' decision not to transfer plaintiff. The jury could have concluded that, as director of personnel, Vannocker must have known plaintiff's, Wimsatt's and Montague's ages. Accordingly, the Court finds that the jury could have concluded that age made a difference in this action since of the five non-exempt employees affected by the 1981 reorganization only three seriously wanted to transfer to Des Moines, and of those three the only one not transferred was plaintiff. The evidence indicates that all three told Ruggeri they would pay their own moving

expenses and Hanlin wanted all of them in the Des Moines branch. The only difference other than age between plaintiff and the two people transferred consisted of the unfounded complaints against plaintiff's work. Since these complaints were discredited, the jury reasonably concluded that age made a difference in defendants' decision to terminate plaintiff's employment. Accordingly, the Court denies defendants' motion for judgment notwithstanding the verdict.

## C. New Trial

■ In ruling on the defendants' motion for a new trial, the Court must apply the following standards:

It is settled law in this circuit that the district court, in considering a motion for a new trial, must set aside a jury verdict where it has determined that the verdict is against the clear weight of the evidence, *Fireman's Fund Ins. Co. v. Aalco Wrecking Co.*, 466 F.2d 179, 186 (8th Cir.1972), *cert. denied*, 410 U.S. 930 [93 S.Ct. 1371, 35 L.Ed.2d 592] (1973), that it is the result of passion or prejudice, *id.; Mueller v. Hubbard Milling Co.*, 573 F.2d 1029, 1039–40 (8th Cir.), *cert. denied*, 439 U.S. 865 [99 S.Ct. 189, 58 L.Ed.2d 174] (1978), or that the verdict is clearly excessive. *Slatton v. Martin K. Eby Constr. Co., Inc.*, 506 F.2d 505, 508 (8th Cir.1974), *cert. denied*, 421 U.S. 931 [95 S.Ct. 1657, 44 L.Ed.2d 88] (1975). Furthermore, the district court, in passing on such motions, is not required to view the evidence in the light most favorable to the non-movant; rather, "[i]t may weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *Slatton v. Martin K. Eby Constr. Co., Inc.*, 506 F.2d at 508 n. 4.

**8.** Even though Vannocker may not have had direct knowledge of plaintiff's offer to pay her own moving expenses, the jury could have found defendants had knowledge through her statements to her two immediate supervisors, Hanlin and Ruggeri. Defendants pointed out

the apparent contradictions between plaintiff's deposition and testimony concerning whether she offered to pay her moving expenses to the jury, and the jury evidently resolved the contradictions in plaintiff's favor.

*Ouachita National Bank v. Tosco Corp.,* 686 F.2d 1291, 1294–95 (8th Cir.1982), *aff'd in part on rehearing en banc,* 716 F.2d 485 (8th Cir.1983). The defendants' motion for a new trial raises numerous grounds, including evidentiary errors, errors in jury instructions, and an excessive award of damages.

### 1. *Statements During Opening Statements and Closing Arguments*

Defendants argue that a new trial should be granted because plaintiff's counsel made misstatements of law during her opening statement and closing argument. Specifically, plaintiff's counsel told the jury that, if plaintiff made out a prima facie case, plaintiff was entitled to a favorable judgment. In addition, during closing argument plaintiff's counsel stated that plaintiff need only show that age was one of the reasons for the termination of plaintiff's employment, rather than a determining factor.

These misstatements do not warrant granting a new trial because the Court instructed the jury at the beginning of trial, and during the jury instructions at the end of the trial, that the jurors should look only to the Court for the applicable law, and not the attorneys. In addition, during plaintiff's closing argument, the Court reminded the jury that the Court would instruct the jury as to the applicable law. The defendants did not object to the statements made by plaintiff's counsel during her opening statement, and have not objected to the Court's instructions concerning the effect of establishing a prima facie case. Accordingly, the Court will not grant a new trial for these misstatements.

Defendants next argue that a new trial should be granted because plaintiff's counsel misled and prejudiced the jury by stating in closing argument that Hanlin's employment was terminated after he organized the Des Moines branch. This fact was not in evidence. After the defendants' objection, the Court instructed the jury to disregard the statement. Under these circumstances the Court sees no prejudice to the defendants, particularly since the defendants' counsel herself had revealed to the jury earlier that Hanlin had been discharged by asking Hanlin whether he had an age discrimination action pending against the defendants.

Defendants also list a number of other alleged misstatements about the evidence made by plaintiff's counsel during her closing argument which warrant a new trial because the statements prejudiced and misled the jury. The defendants did not object when these alleged misstatements were made by the plaintiff's counsel. In its preliminary instructions and closing instructions, the Court told the jury that statements made by counsel are not evidence in the case, and that the jurors should rely on what they recall. In addition, the alleged misstatements either had factual underpinning, or were adequately rebutted by defendants' arguments or evidence.[9] Accordingly, the Court will not grant a new trial.

### 2. *Jury Instructions*

Defendants argue that the Court erred in rejecting defendants' proposed jury instruction No. 19 on mitigation of damages and defendants' proposed jury instruction No. 21 on liquidated damages. Defendants have waived their objections by failing to object to the Court's instructions on mitigation of damages and liquidated damages when given an opportunity to object.[10] Fed.R.Civ.P. 51.

9. Even if Wahl made improper arguments, defendants' failure to object when the statements were made, and the Court's finding that the arguments did not prejudice the jury is sufficient to deny a new trial. *See Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778 (5th Cir. 1983). Defendants also argue that a new trial should be granted because Wahl brought discovery disputes before the jury. As soon as it became apparent what Wahl was doing, the Court stopped Wahl and asked the attorneys to approach the bench. Hence, the defendants were not prejudiced.

10. Before the trial started, defendants objected to allowing any instructions concerning liquidated damages because plaintiff did not specifically request liquidated damages in her com-

■ In the absence of an objection, a new trial will be granted if there is plain error in an instruction. *See* 9 C. Wright and A. Miller, *Federal Practice and Procedure* § 2558 (1971). In the instant action, however, the Court correctly instructed the jury as to plaintiff's duty to mitigate her damages stating:

> You must therefore determine, from the evidence in this case,
>
> (1) Whether plaintiff used reasonable care and diligence in seeking new employment; and
>
> (2) Whether there were other suitable positions available which plaintiff could have discovered for which she was qualified.

Transcript of Proceedings at 391; *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir.1982); *Hegler v. Board of Education*, 447 F.2d 1078, 1081 (8th Cir.1971). The definition of willful given by the Court in its liquidated damages instruction was also correct, having been approved by the United States Court of Appeals for the Fourth Circuit. *Spagnuolo v. Whirlpool Corp.*, 641 F.2d 1109 (4th Cir.), *cert. denied*, 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981). The Court's instructions correctly stated the law and did not confuse the jury.

### 3. *Amount of the Verdict*

Defendants contend that they should be granted a new trial because the jury's award of damages is excessive; alternatively, they ask the Court to reduce the damages awarded. Defendants' main argument is that the evidence failed to establish plaintiff used reasonable efforts to mitigate her damages as required by the ADEA. *See Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806, 809 (8th Cir.1982).

■ Specifically, defendants assert that plaintiff did not use reasonable efforts to mitigate her damages because she took a three-week vacation after her employment was terminated, limited her job search to a 15-mile radius, and was unable to recall the names of companies to which she claimed she had submitted employment applications. Plaintiff had three weeks of vacation pay due when her employment was terminated, and thus, a trip to visit her son in California does not seem all that unusual. Her 15-mile limitation is also not unreasonable since she relied on the bus to get to job interviews. Plaintiff testified that she regularly looked through the want ads, and went to a number of banks and department stores seeking employment. Accordingly, the Court finds that the jury could have concluded that plaintiff made an adequate effort to mitigate her damages, and thus, the amount of the recovery will not be reduced or a new trial granted because of plaintiff's alleged failure to mitigate damages.[11]

■ Defendants also argue that the jury's apparent reliance on Roger Walker's testimony in determining the amount of damages was inappropriate for a number of reasons. Walker, a professor and chairperson of the Department of Economics at Hamline University, testified that plaintiff should recover the following amount:

| | |
|---|---|
| Lost Wages | $ 46,444.00 |
| Lost Pension | 14,951.00 |
| Lost Fringe Benefits | 7,882.00 |
| Total | $ 69,277.00 |
| Less Wages and Unemployment Compensation | 14,402.00 |
| Balance | $ 54,875.00 |

Defendants first object to the method Walker used in determining plaintiff's lost wages because Walker examined only plaintiff's past wage increases without considering that economic conditions had changed. Walker testified that plaintiff's lost wages totaled $46,444. In contrast, defendants urge the Court to grant a new

---

plaint. The Court allowed plaintiff to amend her complaint since the allegation of willfulness in the complaint should have alerted defendants that plaintiff would be seeking liquidated damages. At no point prior to the present motion, however, did defendants object to the Court's definition of willfulness.

11. In addition, the evidence defendants submitted to establish job availability was effectively discredited on cross examination.

trial or reduce the damages awarded because Vannocker's calculations correctly establish plaintiff's damages. Vannocker calculated plaintiff's lost wages by assuming she would have received the same percentage increase received by other non-exempt PMI employees. Vannocker testified that plaintiff's lost wages would have totaled $41,286. It is not entirely clear whether wage increases were based upon merit for PMI's non-exempt employees. However, plaintiff testified that each year she was notified by a letter, which included a statement about her job performance, whether she would be receiving a raise. This suggests that PMI based employee raises at least in part on merit. Accordingly, Walker's method of calculating plaintiff's lost wages was reasonable because there was an indication that merit played a part in determining plaintiff's wage increases.

■ Defendants also object to Walker's refusal to use the severance pay received by plaintiff as an offset in his calculation of plaintiff's damages. The Court instructed the jury it was legally required to use the severance pay as an offset. Transcript of Proceedings at 390; *Laugesen v. Anaconda Co.*, 510 F.2d 307, 317 (6th Cir.1975). However, the defendants failed to clearly establish the amount of severance pay. After trial the defendants submitted a convoluted method of determining severance pay, but were not able to point to a specific reference in the record as to the amount of severance pay. The jurors did the best they could with the evidence presented, and accordingly, the Court will not disturb the jury's verdict.[12]

■ Defendants also object to including as damages $7,882, which represents the cost of replacing insurance benefits defendants provided to plaintiff. Instead, defendants argue that plaintiff should be awarded actual expenditures made by plaintiff in obtaining replacement insurance coverage, and if an uninsured loss is incurred, the actual loss to the extent it would have been covered by the employer's insurance programs. The Court does not accept the defendants' proposed method of calculating plaintiff's damages. The United States Court of Appeals for the Eighth Circuit in *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 373 (8th Cir.1974), stated that pursuant to 29 U.S.C. § 626(b), a plaintiff in an age discrimination case should recover his or her salary and other specific monetary benefits. The insurance benefits plaintiff lost are not any less of a monetary benefit to her because she could not afford to replace her insurance benefits or because she did not become sick. *See Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1185 (6th Cir.1983) (after a finding defendant acted willfully the court allowed plaintiff to recover health benefits plaintiff would have received). Accordingly, the Court finds that plaintiff is entitled to recover her lost insurance benefits.[13]

Accordingly, **IT IS ORDERED** that defendants' motion for judgment notwithstanding the verdict or, alternatively, for a new trial, is denied.

---

12. Defendants also object to the jury's apparent acceptance of Walker's testimony as to plaintiff's unemployment compensation, wages from Metro Commercial Roofing, and pension benefits. The Court cannot be certain how the jury resolved the conflicting testimony. However, the damages awarded by the jury were not so excessive as to warrant a new trial. If the jury resolved the contradictory testimony on these points in plaintiff's favor the Court accepts the jury's determination.

13. Also, defendants did not request that the Court instruct the jury that plaintiff could not recover the insurance benefits.

Defendants' objections to the Court's award of liquidated damages and attorney's fees are addressed in the Court's memorandum and order dated January 17, 1984. Also, the Court did not discuss in its memorandum and order dated January 17, 1984 whether reinstatement was appropriate since plaintiff did not request reinstatement in her motion for entry of judgment.