**Abraham ALVARADO–MORALES, et al., Plaintiffs, Appellants,**

**v.**

**DIGITAL EQUIPMENT CORP., et al., Defendants, Appellees.**

Nos. 87–1331, 87–1445.

United States Court of Appeals,
First Circuit.

Heard Dec. 7, 1987.

Decided April 6, 1988.

Rehearing En Banc Denied May 4, 1988.

Jesus Hernandez Sanchez, San Juan, P.R., for plaintiffs, appellants.

Vicente J. Antonetti, with whom, Goldman & Antonetti, Santurce, P.R., Ronald M. Green, Philip M. Berkowitz, Susan A. Romero and Epstein Becker Borsody & Green, P.C., New York City, were on brief, for defendants, appellees.

Before BOWNES and SELYA, Circuit Judges, and LAFFITTE,* District Judge.

LAFFITTE, District Judge.

This matter is before the Court on appeal from the district court's decision, 669 F.Supp. 1173, granting defendants' motions for summary judgment, to strike scandalous pleadings, and to impose attorney's fees sanctions on plaintiffs' counsel. We find plaintiffs-appellants' arguments and theories to be no less muddled and no more meritorious now than they were below and, accordingly, affirm the district court's grant of summary judgment on the ground of lack of personal jurisdiction over the defendants.

* Of the District of Puerto Rico, sitting by designation.

## I.

The facts and the proceedings below very briefly summarized are as follows. Plaintiffs were employees of non-party Digital Equipment Corporation of Puerto Rico ("Digital P.R.") whose jobs were being phased out at two manufacturing plants. Under the terms of a "voluntary incentive resignation plan," plaintiffs continued to receive wages but were no longer engaged in production. Instead, they reported to a "transition area," where they were provided with career counseling and training, and given the opportunity to seek alternative employment during working hours away from the plant while continuing to accrue full pay. During the four month operation of the plan, the 280 or so affected employees had the option at any time of resigning and taking severance pay proportional to years of employment. If after the four month period an employee had not accepted the severance pay offer, he could continue to report to the transition area and receive full pay.

■ In their complaint, plaintiffs alleged that these events constituted an actionable tort resulting in physical and emotional harm. Plaintiffs alleged that defendants placed plaintiffs in a room of 1,200 square feet, described in the complaint as a "concentration camp," and "tortured" and "brainwashed" them by continually pressing them to resign and to eschew unemployment compensation, by giving them no work to perform, and by keeping them apart from other employees. Plaintiffs also alleged that defendants refused to allow them to meet with Puerto Rico Department of Labor representatives and tried to deprive them of severance pay, both in violation of Puerto Rico law.[1] Each plaintiff prayed for $100,000 in compensatory and $100,000 in punitive damages. Plaintiffs' attempt to bring a class action was denied by the district court.[2]

The named defendants in this action were Digital Equipment Corporation ("Digital Corp.") and three members of its board of directors. Digital Corp. is the parent company of its subsidiary, Digital P.R., the entity which both parties agree was plaintiffs' employer. It is undisputed that diversity jurisdiction lay for a claim against the parent, Digital Corp., but not against the employer, Digital P.R.

## II.

■ As a rudimentary, threshold, and partially dispositive matter, appellants admit that they failed to serve summonses and copies of the complaint on the three named individual codefendants. Only Digital Corp. was served. Appellants offered no good cause for this omission. The claims against the three individuals are thus dismissable under Fed.R.Civ.Proc. 4(j).

■ Appellants incurred another procedural failure by not including a statement of contested issues of material fact along with their opposition to defendants' motion for summary judgment, as required by Local Rule 311.12, U.S. District Court for the District of Puerto Rico. Inexplicably, appellants instead included a statement of *uncontested* issues of material fact. In conformity with the local rule, the district court properly considered defendants' statement of material facts to be uncontroverted and deemed them admitted by plaintiffs.

■ In addition to appellants' still unexplained procedural irregularities, appellants continue to argue substantively at cross purposes. On the one hand, they acknowledge that the Puerto Rico Workmen's Accident Compensation Act, 11 L.P.R.A. sects. 19, 21, is the exclusive vehicle for proceeding in tort against an employer. That is expressly one of the reasons they chose to sue Digital Corp., the parent, as a third

---

1. Insofar as plaintiffs' complaint could also be read as presenting a claim for wrongful constructive discharge, the district court correctly found that plaintiffs' exclusive remedy for severance pay was under the Commonwealth's wrongful discharge statute, Act No. 80, 29 L.P.R.A. sect. 185a–185*l*. *Rodríguez v. Eastern Air Lines, Inc.,* 816 F.2d 24 (1st Cir.1987). Regardless, the district court's dismissal of the two claims under Puerto Rico law is not appealed.

2. The denial of class certification is not appealed.

party. On the other hand, appellants persist in attempting to pierce the corporate veil through a "nerve center" formulation, with Digital Corp. at the center and Digital P.R. as one of its ganglia.[3] Were appellants to be successful in this endeavor, it would have the effect of declaring the parent-subsidiary relationship a fiction and deeming both corporations one employer for purposes of the Workmen's Comp. statute. *Muñiz v. National Can Corp.,* 737 F.2d 145, 147 n. 2 (1st Cir.1984). This result, of course, would have the unintended effect of precluding appellants' claims against Digital Corp., due to the exclusivity of the Workmens' Comp. statute as a remedy against the employer.[4] *Mangual v. General Battery Corporation,* 710 F.2d 15, 20 (1st Cir.1983); *Escudé Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 906 (1st Cir.1980).

### III.

Going beyond plaintiffs' self-defeating alter ego argument, the district court proceeded to review the complaint and the parties' affidavits to determine whether the facts and causes of action pleaded in the complaint could fairly be construed to sustain plaintiffs' claims in the face of defendants' two pronged attack. In a thorough and well supported opinion issued after a hearing on the matter, the district court ruled that the facts did not support plaintiffs' allegations that the court had obtained personal jurisdiction over defendants. Alternatively, the lower court found that no genuine issues of material fact remained which, if proved, would sustain plaintiffs' claims.

Puerto Rico's long-arm statute, 32 L.P.R. A.App.III, Rule 4.7(a), allows personal jurisdiction over a nonresident where the claim arises from, *inter alia,*

(1) Such person or his agent carries out business transactions within Puerto Rico; or

(2) Executes by himself or through his agent, tortious acts within Puerto Rico . . .

■ A function of the statute is to satisfy the familiar requirement that a nonresident defendant have sufficient contacts with the forum such that "fair play and substantial justice" are done, despite defendants' subjection to the court's remote jurisdiction. *World–Wide Volkswagen Corporation v. Woodson, District Judge of Creek County, Oklahoma,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In Puerto Rico it must be shown that the non-resident defendant consummated (not requiring actual physical presence) some act or transaction on the island substantial enough to meet the due process requirements of "fair play and substantial justice" and, further, that the cause of action arises out of the act or transaction. *Escudé Cruz, supra,* at 904–05, (citing *A.H. Thomas Co. v. Superior Court,* 98 P.R.R. 864 (1970)). A parent company may not be subject to the jurisdiction of a court merely because its wholly owned subsidiary resides in the forum. *Mangual, supra,* at 20. The presumption of separateness must be overcome by "strong and robust" evidence that the parent either controlled the subsidiary's business as a whole such that it can be said to have carried out business transactions in Puerto Rico, as provided in Rule 4.7(a)(1), or that it engaged in or controlled those activities which plaintiff alleges tortiously caused him injury, as provided in Rule 4.7(a)(2). Because, as explained, the former route for obtaining jurisdiction over Digital Corp., on the theory that it controlled the entire business of Digital P.R., *would be fatal to appellants'* claim, we concentrate on the factual support for the latter.

---

**3.** The district court was correct in holding, whatever it is worth, that the "common control" rather than the "nerve center" doctrine would be applicable given the facts of the particular corporate structures involved in this case. *See Lugo–Viña v. Pueblo Int., Inc.,* 574 F.2d 41, 43 n. 2 (1st Cir.1978).

**4.** Not surprisingly, the argument that the corporate veil should be pierced to reach the parent through the subsidiary makes more sense used defensively by the parent than offensively by plaintiffs. *See,* for example, *Ramírez Pomales v. Becton Dickinson & Co., S.A.,* 649 F.Supp. 913 (D.P.R.1986).

■ Along with its motion for summary judgment, defendants submitted the affidavits of the three individual defendants, of the president of Digital P.R. and of Digital Corp.'s attorney, and the deposition transcript of named plaintiff Alvarado Morales. These documents establish that the sole employer of plaintiffs was Digital P.R. and that a conventional parent-subsidiary relationship exists between Digital Corp. and Digital P.R. The two corporations maintain separate facilities, records, budgets, work forces, etc. Though two of the individual defendants are directors and/or officers of both corporations and Digital P.R. appears to have sold all of its products to Digital Corp., these facts alone do not prove that the two corporations are in reality one. *Mangual, supra,* at 19–20. Nor do they help to establish in any way that Digital Corp. was involved in the actions giving rise to the complaint. In fact, the affidavits show that the two corporations establish and maintain their own labor relations and personnel policies and that no member of the Digital Corp. Board of Directors had any personal involvement in the implementation of Digital P.R.'s personnel policies in general, or in the particular resignation plan at issue.

Plaintiffs attempt to combat these sworn declarations of fact with affidavits of three former employees of Digital P.R. The content of these affidavits is aimed primarily at showing the interlocking nature of the two Boards of Directors and a generally high level of control exerted by Digital Corp. on various aspects of Digital P.R.'s business. With regard to the influence of Digital Corp. on the implementation of personnel policy at Digital P.R. in general and of the resignation plan specifically, plaintiffs completely failed to controvert defendants' statements. The sworn declaration of plaintiff Alvarado Morales that similar plans had been implemented at Digital Corp. plants in other locations was revealed at his subsequent deposition to be based on unsubstantiated rumor. None of the declarants could ascribe their allegations concerning Digital Corp.'s implementation of the resignation plan to anything beyond mere speculation and dubious deduction.

Defendants' admission that it approved the plan does not bring plaintiffs materially closer to showing the requisite specific involvement in creating and implementing it. *Id.* at 20; *de Walker v. Pueblo International, Inc.,* 569 F.2d 1169, 1171 (1st Cir. 1978). Plaintiffs could not identify a single, specific personnel decision that was ever made by any of the defendants in this case, much less one having to do with the resignation plan.

There being no proof that Digital Corp. had any involvement in the alleged cause of plaintiffs' injuries, it was not erroneous for the district court to dismiss the claim against Digital Corp. for want of personal jurisdiction. Similarly, the district court dismissed the claims against the individual corporate officers.

■ There must be some independent basis for obtaining jurisdiction over the individual corporate officers. Since there is no allegation that the individuals contracted personal business in Puerto Rico, there is no long-arm jurisdiction under Rule 4.7(a)(1). Therefore, appellants must avail themselves of Rule 4.7(a)(2), which requires "some showing of direct personal involvement by the corporate officer in some decision or action which is causally related to plaintiffs' injury." *Escudé Cruz, supra,* at 907. Jurisdiction over the individual officers or directors of a corporation cannot be imputed from jurisdiction over the corporation. *Id.* at 906. There must be independent, personal involvement in the tortious acts. Plaintiffs' affidavits were completely devoid of any proof, or even allegations, that the individual defendants sanctioned, formulated, directed, actively participated or cooperated in the implementation of the resignation plan in their capacities as officers of either Digital P.R. or Digital Corp. Considering also that plaintiffs failed to serve these individuals, the conclusion that the district court lacked personal jurisdiction over them is inescapable.

■ Appellants do not expressly object to the order of the district court striking from appellants' amended complaint scandalous matter which impugned the charac-

ter of defendants. A court has considerable discretion in striking "any redundant, immaterial, impertinent or scandalous matter." Fed.R.Civ.P. 12(f); *Boreri v. Fiat S.P.A.,* 763 F.2d 17, 23 (1st Cir.1985). Counsel for appellants does, however, defend his use of such terms as "concentration camp," "brainwash" and "torture" and such similes as "Chinese communists in Korea," as accurate renderings of his clients' description of their experiences. No matter the origin of these repugnant words replete with tragic historical connotations, they are superfluous descriptions and not substantive elements of the cause of action. As such, they have no place in pleadings before the court.

### IV.

■ We also fail to see an abuse of discretion in the district court's award of attorney's fees against plaintiffs' attorney under Fed.R.Civ.P. 11 and 28 U.S.C. sect. 1927 ("multipli[cation of] the proceedings in any case unreasonably and vexatiously").[5] If the vexatiousness of the descriptive words did not necessarily belabor meritless proceedings, counsel's failure to properly investigate the facts prior to filing suit and his failure to withdraw the complaint when the facts were revealed to him by defendants' attorney during the early stages of discovery, certainly had that effect. Rule 11 sanctions are mandatory when an attorney fails to make reasonable efforts to ensure that the pleading he signs is grounded in fact. *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1177 (D.C.Cir.1985).

Moreover, this obviously meritless appeal merely prolongs again these frivolous proceedings. Double costs to appellees. Fed. R.App.P. 38.

*Affirmed.*

---

5. We take no position as to the amount of attorney's fees as that issue is not before us.