Carl KALE, Plaintiff, Appellant,

v.

COMBINED INSURANCE COMPANY
OF AMERICA, Defendant, Appellee.

Carl KALE, Plaintiff, Appellee,

v.

COMBINED INSURANCE COMPANY
OF AMERICA, Defendant, Appellant.

Nos. 87–1277, 87–1278.

United States Court of Appeals,
First Circuit.

Heard Sept. 15, 1988.

Decided Nov. 17, 1988.

748

Philip R. Olenick with whom Paul L. Nevins, Boston, Mass., was on briefs for Carl Kale.

Kenneth M. Bello with whom Malcolm Russell–Einhorn and Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., were on brief for Combined Ins. Co. of America.

Before BOWNES and BREYER, Circuit Judges, and ATKINS,* Senior District Judge.

BOWNES, Circuit Judge.

These consolidated appeals arise from an alleged violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621, 623. Plaintiff-appellant Carl Kale appeals the district court's entry of summary judgment in favor of defendant-appellee Combined Insurance Company of America (Combined) on his claim of age discrimination. In its cross-appeal, Combined appeals the court's denial of its motion for sanctions, including attorney's fees, under Fed. R.Civ.P. 11. Combined also asks for appellate sanctions under Fed.R.App.P. 38 and 28 U.S.C. §§ 1912 & 1927.

We affirm both decisions of the district court and deny Combined's request for appellate sanctions. We write at length, however, because of the important issues of first impression that these appeals present for this circuit.

## I. FACTUAL BACKGROUND AND PROCEEDINGS BELOW

For over twenty years, Carl Kale was an accountant employed by Combined at its Brookline operation, known as the Hearthstone Division. Following more than two years of poor evaluations and warnings about the continued inadequacy of his work performance from his supervisors [1] (the legitimacy of these criticisms is hotly contested by the plaintiff), Kale received his unconditional release on May 11, 1983. At that time he was 52 years old.

For much of the year following his dismissal Kale sought other employment but did not pursue any legal action against Combined under the ADEA. He was un-successful in his attempt to locate work and now contends that all during that time he was still "reeling from the blow" of being fired by Combined. Plaintiff recovered from this emotional trauma on April 26, 1984, when he contacted his present counsel to determine whether he might have a claim of age discrimination against Combined. After deciding that Kale had such a claim, his counsel took the first step required by the ADEA and filed an age discrimination complaint with the Massachusetts Commission Against Discrimination (MCAD) on May 3, 1984.[2] Pursuant to the dual filing system that operates under the ADEA, there was a simultaneous filing of Kale's complaint with the Equal Employment Opportunity Commission (EEOC) on that same date. These filings occurred 357 days after the alleged discriminatory firing.

MCAD notified defendant by mail of the charges against it on May 9, 1984 and offered to conciliate the dispute. In order to process an age discrimination claim, however, the MCAD must receive the complaint within six months (180 days) of the alleged discriminatory act. Since Kale's filing was well beyond that date, MCAD promptly issued a letter of final disposition stating that it lacked jurisdiction over plaintiff's untimely complaint.[3] The EEOC, likewise, afforded Kale no relief. On September 19, 1984 it wrote to both parties declaring its intention not to prosecute an age discrimination claim against Combined.

Kale then filed the present suit in the federal district court in Massachusetts. Combined moved for summary judgment on the ground that plaintiff had lost his right to maintain a private action under the ADEA by not making a timely filing with

---

* Of the Southern District of Florida, sitting by designation.

1. In fact, at one point near the end of the period in question, Kale received a review that noted his improvement and higher quality job performance. This proved to be a brief aberration, however, since his next evaluation and those thereafter found his performance, again, to be sub-par.

2. The ADEA requires that in states that have laws against age discrimination and an agency empowered to enforce them, a plaintiff must file with the state agency before bringing a federal action directly under the ADEA. *See* 29 U.S.C. §§ 626(d) & 633(b); *infra* note 4.

3. Although it lacked jurisdiction over the matter, the MCAD informed both parties that it still would be willing to conciliate the dispute if they so desired. Combined declined this offer.

the EEOC. It contended that since the ADEA mandates that such filing occur within 300 days of the alleged violation, *see* 29 U.S.C. § 626(d)(2), plaintiff's complaint was lodged 57 days too late. Defendant also moved for sanctions and fees under Rule 11 due to Kale's continued prosecution of a procedurally time-barred, substantively frivolous claim.

Plaintiff opposed both of these motions. He alleged that although he had filed outside of the 300–day limit, his claim should still be heard because of equitable considerations. He argued that the 300–day filing period was akin to a statute of limitations and as such could be equitably tolled where a plaintiff was "excusably ignorant" of his rights. Kale further argued that Rule 11 sanctions were inappropriate since none of his contentions were either frivolous or made in bad faith.

The district court issued a memorandum and order granting Combined's motion for summary judgment but denying its motion for sanctions. The court determined that while the 300–day filing period might well be subject to equitable modification, plaintiff provided no evidence that could support such modification. Summary judgment was therefore granted.

In its analysis of defendant's motion for Rule 11 sanctions, the district court examined both the procedural and the substantive aspects of plaintiff's claim. As to the untimely filing issue, the court stated that although it did not find Kale's argument for equitable tolling convincing, the lack of First Circuit precedent on point allowed the plaintiff great leeway to argue that this circuit should take a more liberal view of the equitable tolling issue than had other courts. Turning to Kale's underlying claim, the court found that while plaintiff had been criticized for years concerning his poor work performance, that did not negate a possible finding of discriminatory intent regarding his dismissal. The court agreed with plaintiff that it was possible that the criticisms were unfounded and were being used as a pretext to cover-up a discriminatory firing. Based upon that hypothesis, the court ruled that Kale's claim was not so frivolous as to warrant Rule 11 sanctions.

## II. THE ADEA STATUTORY SCHEME AND EQUITABLE MODIFICATION OF ITS TIME LIMITS

Congress passed the ADEA in 1967 with the hope of ending age discrimination in the work place. *See Dartt v. Shell Oil Co.*, 539 F.2d 1256, 1259–60 (10th Cir.1976), *aff'd by an evenly divided Court*, 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977). To that end, the statute authorized private suits to vindicate alleged age discrimination. To maintain a private action under the ADEA scheme, an aggrieved party must first file a complaint with the EEOC. This complaint must be filed within 300 days of the alleged act of discrimination or within 180 days in states having no law against age discrimination and no agency that is authorized to investigate such claims.[4] 29 U.S.C. §§ 626(d)(1), 626(d)(2) & 633(b).[5]

Over the past fifteen years, many courts have considered whether the 300–day filing period is a "jurisdictional prerequisite" to maintaining a private suit or whether it is more like a statute of limitations, which may be modified in individual cases due to equitable concerns. *See, e.g., Naton v. Bank of California*, 649 F.2d 691, 695–96 (9th Cir.1981). Although this circuit has come close to deciding this issue a number

---

**4.** The statute provides in relevant part:

No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

(1) within 180 days after the alleged unlawful practice occurred; or

(2) in a case to which section 633(b) of this title applies, within 300 days after the alleged

unlawful practice occurred, or within 30 days after the receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

29 U.S.C. § 626(d).

**5.** In the case at bar, both parties agree that the relevant filing period is 300 days since Massachusetts does have a state agency, the MCAD, that investigates age discrimination.

of times, it has never been forced to definitively resolve it. *See Earnhart v. Commonwealth of Puerto Rico*, 691 F.2d 69, 72–73 & n. 1 (1st Cir.1982) (discussing whether rule of equitable modification of the ADEA filing period followed in other circuits should be applied to Title VII cases); *Ciccone v. Textron, Inc.*, 616 F.2d 1216, 1218 n. 3, 1220 n. 7 (1st Cir.1980) (declining to decide issue of equitable modification under the ADEA); *Daughtry v. King's Department Stores, Inc.*, 608 F.2d 906, 909 (1st Cir.1979) (putting-off until another day the issue of equitable modification); *Hadfield v. Mitre Corp.*, 562 F.2d 84, 87–88 (1st Cir.1977) (suggesting that equitable tolling may be permissible for the 60–day limitations period set out in § 633(b) of the ADEA).[6]

Because of the dearth of First Circuit cases on point, we find instructive the decisions of other circuits. Our sister circuits are in virtual unanimity in holding that the ADEA filing period is akin to a statute of limitations and is subject to equitable modification. *See Dillman v. Combustion Engineering Corp.*, 784 F.2d 57, 59 (2d Cir. 1986); *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1485 (11th Cir. 1984); *Vance v. Whirlpool Corp.*, 716 F.2d 1010, 1012 (4th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984); *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584, 594–95 (5th Cir. 1981) (en banc); *Nielsen v. Western Electric Co., Inc.*, 603 F.2d 741, 743 (8th Cir. 1979); *Naton v. Bank of California*, 649 F.2d 691, 695–96 (9th Cir.1981); *Wright v. State of Tennessee*, 628 F.2d 949, 952–53 (6th Cir.1980) (en banc); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 193 (3rd Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978); *Kephart v. Institute of Gas Technology*, 581 F.2d

1287, 1288–89 (7th Cir.1978); and *Dartt*, 539 F.2d at 1259–60.

■ These courts have based their holdings in part on the premise that:

> The ADEA is remedial and humanitarian legislation and should be liberally interpreted to effectuate the congressional purpose of ending age discrimination in employment. Additionally, strict compliance with section 626(d)(1)'s time limitation should not be required of laymen attempting to enforce their statutory rights.

*Dartt*, 539 F.2d at 1260 (citations omitted); *see also Skoglund v. Singer Co.*, 403 F.Supp. 797, 801 (D.N.H.1975) (stating same view of ADEA). Congress has implicitly endorsed this view of the filing period. When the ADEA was amended in 1978, the "Joint Explanatory Statement of the Committee of Conference" stated:

> The conferees agree that the "charge" requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA and that therefore equitable modification for failing to file within the time period will be available to plaintiffs under this act. *See, e.g., Dartt v. Shell Oil Co.*, 539 F.2d 1256 (10th Cir.1976), *aff'd by an evenly divided Court*, [434 U.S. 99] 98 S.Ct. 600 [54 L.Ed.2d 720] (1977); *Bonham v. Dresser Industries, Inc.*, [569 F.2d 187] (3rd Cir.1977); *Charlier v. S.C. Johnson & Son, Inc.*, 556 F.2d 761 (5th Cir.1977).

H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 12, *reprinted in* 1978 U.S.Code Cong. & Admin.News 504, 528, 534.[7] Moreover, while the Supreme Court has not dealt with the tolling issue under the ADEA, it has cited favorably the above Conference Committee language in finding an analogous filing period under Title VII to be subject

---

**6.** While we have not until now decided this issue, a number of our district courts have concluded that the filing period should be subject to equitable modification. *See, e.g., Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170, 1172 (D.Mass.), *aff'd without opinion*, 720 F.2d 658 (1st Cir.1983); *Abbott v. Moore Business Forms, Inc.*, 439 F.Supp. 643, 645 (D.N.H.1977); *Skoglund v. Singer Co.*, 403 F.Supp. 797, 804 (D.N.H.1975).

**7.** Such subsequent legislative statements, though not considered part of the legislative history of an act, are entitled to interpretive weight especially where the intent of the enacting congress is unclear. *See Vance v. Whirlpool Corp.*, 716 F.2d 1010, 1012 (4th Cir.1983) (citing *Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1981)), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1600, 80 L.Ed.2d 130 (1984).

to equitable modification. *Zipes v. Transworld Airlines, Inc.*, 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133, 71 L.Ed.2d 234 (1982).

■ We agree with this overwhelming weight of authority and hold that the filing period contained in § 626(d) of the ADEA is subject to equitable modification. The more difficult task, however, is deciding what factors might trigger such modification.

■ Courts have recognized two alternate, though related, doctrines whereby a plaintiff may modify the length of ADEA filing period: equitable estoppel and equitable tolling. Although the doctrines have been broadened, both grew out of the "view that a defendant should not be permitted to escape liability by engaging in misconduct that prevents the plaintiff from filing his or her claim on time." *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988). Equitable estoppel occurs where an employee is aware of his ADEA rights but does not make a timely filing due to his reasonable reliance on his employer's misleading or confusing representations or conduct. *See Dillman*, 784 F.2d at 60–61. Evidence of either the employer's improper purpose or his constructive knowledge of the deceptive nature of his conduct must also be shown. *See Price v. Litton Business Systems, Inc.*, 694 F.2d 963, 965 (4th Cir.1982); *Naton*, 649 F.2d at 696.

■ Equitable tolling, on the other hand, casts a wider net. Although there may be a number of grounds upon which to ask for equitable tolling,[8] by far the most commonly asserted basis in past ADEA decisions is that of a plaintiff's "excusable ignorance" of his statutory rights. *See, e.g., Vaught,*

745 F.2d 412; *McClinton*, 743 F.2d at 1485–86; *Bonham*, 569 F.2d at 193. While it is clear that an employee's ignorance of his statutory rights, in itself, will not toll a statute of limitations, *see Larson v. American Wheel and Brake, Inc.*, 610 F.2d 506, 510 (8th Cir.1979); *Quina v. Owens–Corning Fiberglass Corp.*, 575 F.2d 1115, 1118 (5th Cir.1978); *Downie v. Electric Boat Division*, 504 F.Supp. 1082, 1086 (D.Conn. 1980), it is equally plain that where such ignorance is caused either by misconduct of an employer or by failure of that employer to conspicuously post the informational EEOC notices required by the ADEA, there may be a valid claim for equitable tolling— at least until the employee receives actual notice of his statutory rights or retains an attorney. *Kephart*, 581 F.2d at 1289; *Bonham*, 569 F.2d at 193; *see also Cano v. United States Postal Service*, 755 F.2d 221, 222–23 (1st Cir.1985) (noting that failure to post is not dispositive; one must also look to whether the employee had received actual or constructive knowledge through other means).

Courts have often cited to five equitable factors that should be weighed when considering whether to allow equitable tolling in a given case. These factors are: "(1) lack of actual notice of filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir.1988); *see also Wright*, 628 F.2d at 953; *Bassett v. Sterling Drug, Inc.*, 578 F.Supp. 1244, 1247 (S.D.Oh.1984), *appeal dismissed*, 770 F.2d 165 (6th Cir.1985); *Hay v. Wells Cargo, Inc.*, 596 F.Supp. 635, 638 (D.Nev.1984), *aff'd*, 796 F.2d 478 (9th Cir.1986); *Abbott,*

---

**8.** For example, at least one plaintiff has requested and received equitable tolling on the ground that he relied on EEOC assertions that the filing period would be extended in his case. *See Leite v. Kennecott Copper Corp.*, 558 F.Supp. 1170, 1173–74 (D.Mass.), *aff'd without opinion*, 720 F.2d 658 (1st Cir.1983). Plaintiffs have also been granted equitable tolling where the untimely filing was due to gross attorney error. *See Volk v. Multi–Media, Inc.*, 516 F.Supp. 157,

161–62 (S.D.Oh.1981); *but see Jacobson v. Pitman–Moore, Inc.*, 624 F.Supp. 937, 942–43 (D.Minn.1985) (holding plaintiff responsible for attorney error), *aff'd without opinion*, 786 F.2d 1172 (8th Cir.1986); *see also Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1200 n. 8 (5th Cir.1975) (suggesting inequality of holding employer liable for the failings of plaintiff's counsel).

439 F.Supp. at 646. In the analogous area of equitable tolling under Title VII, the Supreme Court has modified one aspect of this approach by holding that "absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify tolling is identified, it is not an independent basis for invoking the doctrine...." *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152, 104 S.Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (per curiam).

In the context of ADEA cases where a plaintiff is claiming excusable ignorance of the filing deadline, we believe a court should initially determine whether the plaintiff had either actual or constructive knowledge of his rights under the ADEA. Actual knowledge occurs where an employee either learns or is told of his ADEA rights, even if he becomes only generally aware of the fact that there is a statute outlawing age discrimination and providing relief therefor. *See DeBrunner v. Midway Equipment Corp.*, 803 F.2d 950, 951–52 (8th Cir.1986). Once an employee is "generally aware of his legal right to obtain redress for that wrong [age discrimination], he possesses sufficient knowledge to enable him to vindicate his rights if he so desires." *McClinton*, 743 F.2d at 1486. Constructive knowledge, on the other hand, is "attributed" to an employee in situations where he has retained an attorney, *see Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1200 n. 8 (5th Cir.1975), or where an employer has fulfilled his statutory duty by conspicuously posting the official EEOC notices that are designed to inform employees of their ADEA rights. *McClinton*, 743 F.2d at 1486; *Dillman*, 784 F.2d at 60; *Posey v. Skyline Corp.*, 702 F.2d 102, 105–06 (7th Cir.), *cert. denied*, 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *Hrzenak v. White–Westinghouse Appliance Co.*, 682 F.2d 714, 718–19 (8th Cir.1982); *Bonham*, 569 F.2d at 193 n. 7. In either case, the law imputes knowledge of the ADEA to the plaintiff regardless of whether, in fact, he knew of his rights.

If the court finds that the plaintiff knew, actually or constructively, of his ADEA rights, ordinarily there could be no equitable tolling based on excusable ignorance. *See Vaught v. R.R. Donnelley & Sons Co.*, 745 F.2d 407, 412 (7th Cir.1984); *McClinton*, 743 F.2d at 1486; *Posey*, 702 F.2d at 105–06. If, however, the employee has no knowledge of his rights and his ignorance is due to misleading conduct by the defendant or failure of the defendant to post the required EEOC notices, then an initial case for equitable tolling has been made. Indeed, a number of courts have held that such misconduct or omission will support equitable tolling without going any further. *See DeBrunner*, 803 F.2d at 952; *McClinton*, 743 F.2d at 1486; *Vance*, 716 F.2d at 1013; *Kephart*, 581 F.2d at 1289; *Bonham*, 569 F.2d at 193; *but see Wilkerson v. Seigfried Insurance Agency, Inc.*, 683 F.2d 344, 347 (10th Cir.1982) (stating that failure to post EEOC notices will not toll absent improper intent of the defendant).

We do not think, however, that the inquiry should end there. The court should also assess any countervailing equities against the plaintiff. For example, did he diligently pursue his claim, *see Andrews*, 851 F.2d at 151–52; *Hay*, 596 F.Supp. at 638–40; *Abbott*, 439 F.Supp. at 646–49, was his ignorance of his rights reasonable under the circumstances, *see id.*, and would allowing equitable tolling still fulfill the basic purposes behind the limited filing period—namely, providing the government an opportunity to conciliate while the complaint is fresh and giving early notice to the employer of possible litigation.[9] *See Posey*, 702 F.2d at 104–05; *Bonham*, 569 F.2d at 193; *Dartt*, 539 F.2d at 1261. Finally, even if the court finds that the above factors call for equitable tolling, it must then take account of the degree to which delay prejudices the defendant. *See Bald-*

---

**9.** It is important to note, however, that these factors are not exhaustive. It is in the nature of equity to entertain case-specific factors that may counsel in favor of tolling. *See Volk v. Multi–Media, Inc.*, 516 F.Supp. 157, 161–62 (S.D.Oh. 1981).

*win County Welcome Center*, 466 U.S. at 152, 104 S.Ct. at 1726; *Andrews*, 851 F.2d at 151–52.

■ Turning to the case at bar, we need go no further than the first step of our analysis. Combined has presented uncontroverted evidence in the affidavit of Stephen J. Brandstrader that it had conspicuously posted the required EEOC notices at Kale's place of employ. This, it contends, negates any possible claim of ignorance by Kale. To counter this, Kale makes two arguments. First, he alleges that he never saw any EEOC notices posted. Second, even if such notices were posted, that fact alone should not impute constructive knowledge to an employee since the notices do not expressly state that there is a 300/180–day filing deadline. Each of these arguments is easily dispatched.

Plaintiff's allegation that he did not see the posted notices will not support a claim of excusable ignorance. It is not necessary that the employee actually observe the notices. "If the employer complied with the relevant posting requirements, an employee's assertion that he never saw any notices should not of itself require the tolling of the 180–days in which to file...." *Bonham*, 569 F.2d at 193 n. 7; *see Byers v. Follmer Trucking Co.*, 763 F.2d 599, 601 (3rd Cir.1985); *Vaught*, 745 F.2d at 412; *Hrzenak*, 682 F.2d at 719; *Butz v. Hertz Corp.*, 554 F.Supp. 1178, 1182 (W.D.Pa. 1983). Moreover, in the face of the affidavit of Mr. Brandstrader, which asserts Combined's full compliance with the posting requirement, plaintiff's argument of non-observation does not raise a material dispute as to whether the notices were posted that survives a summary judgment motion. *See Vaught*, 745 F.2d at 412; *Posey*, 702 F.2d at 105; *Brudne v. Amalgamated Trust & Savings Bank*, 627 F.Supp. 458, 464–65 (N.D.Ill.1986); *Butz*, 554 F.Supp. at 1182; *Downie v. Electric Boat Division*, 504 F.Supp. 1082, 1086 (D.Conn. 1980); *but see Posey*, 702 F.2d at 106–07 (Cudahy, J., dissenting) (arguing that allegation of non-observation of notices raises an issue as to whether they were, in fact, posted).

Kale also argues that even if the notices were posted, we should find them insufficient to apprise the plaintiff of his rights under the ADEA because they do not specifically detail the limited filing period. This argument is misplaced for two reasons. First, equitable tolling is not properly invoked where a plaintiff alleges mere ignorance of a specific provision contained in a statute. Instead, ignorance in the context of equitable tolling under the ADEA, means ignorance of the unlawfulness of the defendant's conduct that is proscribed by the statute. Equity only requires that a plaintiff be aware that a statute has been passed that protects workers against age discrimination. It does not require that he know of all the filing periods and technicalities contained in the law. *See DeBrunner*, 803 F.2d at 952; *McClinton*, 743 F.2d at 1486; *Vance*, 716 F.2d at 1013; *Bonham*, 569 F.2d at 193. Thus, a plaintiff who is aware of his ADEA rights but unaware of the filing deadlines cannot, without more, invoke the doctrine of equitable tolling.

■ Second, Congress expressly entrusted the design and content of the notices to the discretion of the EEOC. The ADEA states:

> Every employer ... shall post and keep posted in conspicuous places upon its premises a notice to be prepared or approved by the Equal Employment Opportunity Commission setting forth information as the Commission deems appropriate to effectuate the purposes of this chapter.

29 U.S.C. § 627. Whether this court might think it helpful to prospective plaintiffs to have the filing deadline mentioned in the notices is immaterial. Congress has delegated the responsibility for the make-up of the notices to the EEOC and it has exercised its discretion. Absent a notice that is so inadequate as to not allow employees a "meaningful opportunity" to become aware of their rights under the ADEA, the EEOC's judgment of what is a proper notice will not be disturbed. *See*

*Posey,* 702 F.2d at 106 n. 2; *Pirone v. Home Insurance Co.,* 507 F.Supp. 1281, 1287–88 (S.D.N.Y.1981), *aff'd,* 742 F.2d 1430 (2d Cir.1983). Moreover, the notices in this case, while not specifically noting the 300/180–day filing period, did inform employees of the illegality of age discrimination and instruct them to contact the EEOC "immediately" if they felt they may be victims of discrimination. Such a notice is not so inadequate that we would second-guess the EEOC's judgment. *See Posey,* 702 F.2d at 106 n. 2.

Plaintiff argues for a blanket rule requiring all employers to inform employees of their ADEA rights and filing periods upon their dismissal. While, as plaintiff contends, such a requirement might be simpler to enforce, the fact remains that congress has not decreed such a condition through the language of the ADEA and no court has interpreted congress' intent as calling for such a result. *See Butz,* 554 F.Supp. at 1181. We also decline to impose such a burden absent congressional instruction.[10]

■ Plaintiff presented two other arguments on appeal. He suggests first that a 300–day limitations period in cases such as this is so short as to transgress fundamental principles of due process. While we question whether the ADEA grants private employees any property interest in non-discriminatory employment, *see Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542–43, 105 S.Ct. 1487, 1493–94, 84 L.Ed.2d 494 (1984), we decline to express any opinion thereon since plaintiff did not proffer this argument to the district court. It has long been the rule of this circuit that arguments not made initially to the district court cannot be raised on appeal. *See Johnson v. Allyn & Bacon, Inc.,* 731 F.2d

64, 73 (1st Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984); *Marcial Ucin, S.A. v. S.S. Galicia, Her Engines, Tackle, etc.,* 723 F.2d 994, 1002 (1st Cir.1983); *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979). We transgress this rule only in egregious circumstances where " 'a gross miscarriage of justice would occur,' " and where the untimely argument is " 'so compelling as to virtually to insure appellant's success.' " *Johnston,* 595 F.2d at 894 (quoting *Newark Morning Ledger Co. v. U.S.,* 539 F.2d 929, 932 (3rd Cir.1976) and *Dobb v. Baker,* 505 F.2d 1041, 1044 (1st Cir.1974); *see also Johnson,* 731 F.2d at 73 (noting same). Kale's due process argument cannot clear this high hurdle.

■ Plaintiff's other argument is that defendant's refusal to attend conciliation with the MCAD estops it from raising a time-bar defense. Plaintiff contends that since the conciliation procedures were created to benefit employers, if an employer does not avail himself of them he should not be able to assert a defense of untimely filing. This argument also suffers from the same procedural defect as Kale's due process argument: it was not raised before the district court. Even though plaintiff's memorandum in opposition to defendant's motion for summary judgment did mention the word estoppel, his argument appears to have been based solely on equitable tolling grounds. Indeed, the district court, after disposing of Kale's tolling argument, stated that Kale has not "suggested any other reason for his delay in filing his charge of discrimination with MCAD, such as any conduct by defendant which might have misled him into thinking that he had no

---

**10.** This holding, however, should not pretermit contentions that the posted notices are insufficient as to particular employees. *See* 29 C.F.R. § 1627.10 (1987) (The notice "must be posted in prominent and accessible places where it can readily be observed by employees, applicants for employment and union members."). Where an employer employs travelling salesmen, for example, posting notices at the home office may be sufficient as to the office workers, yet insufficient as to those who never work at the home office. In such a case, the employer might be required to take steps other than posting in

order to ensure that his employees have a meaningful opportunity to learn of their ADEA rights. *See Charlier v. S.C. Johnson & Son, Inc.,* 556 F.2d 761, 765 (5th Cir.1977) (while noting no statutory duty on employers to inform employees of their statutory rights, the court stated that in cases where particular employees are unlikely to learn of their rights through a conspicuous posting, more may be required); *Pirone v. Home Insurance Co.,* 507 F.Supp. 1281, 1287–88 (S.D. N.Y.1981), *aff'd,* 742 F.2d 1430, (2d Cir.1983) (stating that notice must be adequate as to all employees regardless of their location).

claim." Even assuming, *arguendo*, that the invocation of the word estoppel properly raised the issue before the district court, Kale's contention is meritless. An essential element of equitable estoppel is reliance by the plaintiff on the words or acts of the defendant. *See Mull v. Arco Durethene Plastics, Inc.*, 784 F.2d 284, 292 (7th Cir.1986); *Dillman*, 784 F.2d at 57; *Naton*, 649 F.2d at 696. In this case, plaintiff did not file with the MCAD until 57 days after the 300–day filing deadline. Combined's refusal to conciliate came later still. Certainly, plaintiff cannot now contend that his reliance on Combined's actions—which occurred *after* the filing deadline had passed—was the cause of his untimely filing. Thus, "[i]n the absence of reliance there is no basis for equitable estoppel." *Ewald v. Great Atlantic & Pacific Tea Co., Inc.*, 620 F.2d 1183, 1188, (6th Cir.) (court refused plaintiff's argument that he relied on a government letter stating that he had complied with the statutory prerequisites to maintaining suit where that letter was received after the filing deadline had passed), *vacated on other grounds*, 449 U.S. 914, 101 S.Ct. 311, 66 L.Ed.2d 143 (1980).

To summarize, we find the plaintiff's claim for equitable tolling of the 300–day filing period unavailing. Defendant's posting of the EEOC notices afforded the plaintiff constructive knowledge of his ADEA rights, and therefore, equity will not excuse his untimely filing. Since Kale has presented no disputed issue of material fact as to the time-bar issue, we affirm the district court's grant of summary judgment in favor of defendant.

## III. COMBINED'S MOTION FOR SANCTIONS UNDER FED.R.CIV.P. 11

On cross-appeal, Combined asks this court to reverse the district court's decision denying sanctions under Rule 11. Combined alleges that Kale's claims were both substantively and procedurally flawed, and

that he continued to prosecute those claims even after Combined had revealed their utter lack of merit. For the reasons that follow, we affirm the disposition of the district court.

### A. *Standard of Review.*

In the wake of the 1983 amendments to Rule 11, a debate has arisen in the various circuits as to what standard of review an appellate court should use in passing on a district court's Rule 11 determination. *See, e.g., FDIC v. Tekfen Construction and Installation Co., Inc.*, 847 F.2d 440, 442–43 (7th Cir.1988) (noting disagreement among authorities as to proper standard of review). In this case, while Combined argues for a *de novo* review and Kale argues for an abuse of discretion standard, neither addresses all of the concerns raised by the case law on point. It is necessary, therefore, to examine the relevant appellate decisions discussing this issue.

It should be noted at the outset that although this circuit has often reviewed Rule 11 dispositions under an abuse of discretion standard, none of our cases has examined the validity of that standard in light of the 1983 amendments to the rule. *See Alvarado–Morales v. Digital Equipment Corp.*, 843 F.2d 613, 618 (1st Cir. 1988); *Fudge v. Penthouse International, Inc.*, 840 F.2d 1012, 1022 (1st Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988); *EBI, Inc., v. Gator Industries, Inc.*, 807 F.2d 1, 6 (1st Cir. 1986); *Gianfriddo v. Western Union Telegraph Co.*, 787 F.2d 6, 7 (1st Cir. 1986).[11] The argument for a *de novo* standard thus appears to be one of first impression in this circuit and calls upon us to reassess our past holdings.

In 1983, Rule 11 was amended to establish a simple, objective standard for determining whether a party and his attorney

---

**11.** The case that comes closest is *Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600 (1st Cir.1988). *Muthig* does not resolve the issue, however. Although it states that an "appellate court will afford a degree of leeway to a district

court in applying this rule," *id.* at 603, it also cites favorably to cases that call for a *de novo* review at the appellate level. *See id.* at 603, 604–05.

have responsibly initiated and/or litigated a cause of action. The Rule states:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. The amendment did away with the old standard of subjective good faith.[12] on the part of the attorney, *see Nemeroff v. Abelson,* 620 F.2d 339, 350 (2d Cir.1980) (per curiam); *Hashemi v. Campaigner Publications, Inc.,* 784 F.2d 1581, 1583 (11th Cir.1980), and replaced it with an objective one of "reasonableness under the circumstances." Fed.R.Civ.P. 11 advisory committee's note. The previous rule had not been "effective in deterring abuses" of the litigation process, and it was hoped that the new standard would "reduce the reluctance of courts to impose sanctions." *Id.; see also Eastway Construction Corp., v. City of New York,* 762 F.2d 243, 253 (2d Cir.1985) (noting same).

A number of courts of appeals have examined the new language of Rule 11 and concluded that appellate review of lower court determinations concerning the imposition of sanctions should be *de novo,* at least in part. *See Eastway Construction Corp.,* 762 F.2d at 254 n. 7; *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 828 (9th Cir.1986); *Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1173–75 (D.C.Cir.1985); *Donaldson v. Clark,* 819 F.2d 1551, 1555–56 (11th Cir.1987) (en banc); *Beeman v. Fiester,* 852 F.2d 206, 209 (7th Cir.1988); *Kurkowski v. Volcker,* 819 F.2d 201, 203 n. 8 (8th Cir. 1987); *see also Snow Machines, Inc. v.*

*Hedco, Inc.,* 838 F.2d 718, 724–25 (3rd Cir. 1988) (citing favorably, though not expressly adopting, *de novo* standard). Some of these decisions establish a three-tier standard of review for Rule 11 dispositions.

> If the facts relied upon by the district court to establish a violation of the Rule are disputed on appeal, we review the factual determinations of the district court under a clearly erroneous standard. If the legal conclusion of the district court that the facts constitute a violation of the Rule is disputed, we review that legal conclusion *de novo.* Finally, if the appropriateness of the sanction imposed is challenged, we review the sanction under an abuse of discretion standard.

*Zaldivar,* 780 F.2d at 828; *see Kurkowski,* 819 F.2d at 203 n. 8. Others have created a variation on this approach "utilizing an abuse of discretion standard when reviewing the factual reasons for imposing Rule 11 sanctions and the amount and type of sanctions, while reserving a de novo analysis for reviewing the legal sufficiency of a pleading or motion and the determination to impose sanctions." *Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 872 (5th Cir.1988) (en banc); *see Donaldson,* 819 F.2d at 1556; *Westmoreland,* 770 F.2d at 1174–75; *Eastway Construction Corp.,* 762 F.2d at 254 n. 7.

The *ratio decendi* of these cases is that by using the phrase "shall impose ... an appropriate sanction," the new rule *mandates* the imposition of sanctions whenever an objective violation of its tenets is found. *See, e.g., Westmoreland,* 770 F.2d at 1174–75. And since the Rule establishes an objective standard, an appellate court is in as good a position as the district court to evaluate the legal sufficiency of any pleadings or motions. *See Eastway Construction Corp.,* 762 F.2d at 254 n. 7.

An almost equal number of circuit courts, however, have looked at the same language and concluded that an abuse of discretion standard should be used in re-

---

12. The language of the previous Rule 11 was subjective and permissive. It provided that an attorney's signature on a pleading certified that "he has read the pleading; that to the best of his knowledge, information, and belief, there [was]

good ground to support it; and that it [was] not interposed for delay.... For a wilful violation of this rule an attorney *may* be subjected to appropriate disciplinary action." (emphasis added).

viewing all aspects of a district court's Rule 11 determination. *See Thomas*, 836 F.2d at 872–73; *FDIC v. Tekfen Construction and Installation Co., Inc.*, 847 F.2d 440, 443 (7th Cir.1988); *Century Products, Inc. v. Sutter*, 837 F.2d 247, 253 (6th Cir. 1988) (utilizing abuse of discretion standard while noting possibility of *de novo* review of abstract legal determinations); *O'Connell v. Champion*, 812 F.2d 393, 395 (8th Cir.1987); *Cotner v. Hopkins*, 795 F.2d 900, 903 (10th Cir.1986); *Stevens v. Lawyers Mutual Liability Insurance Co. of North Carolina*, 789 F.2d 1056, 1060 (4th Cir.1986). These cases opt for this result because of its ease in application and because it vests the lion's share of the responsibility for imposing Rule 11 sanctions with the judicial actor closest to litigation— the district judge. We find this argument persuasive.

The district judge is a firsthand observer of the proceedings below. His is the view from the trenches: he sees the shots fired by one party against the other, and he has full knowledge of the circumstances prompting the crossfire. It is his exercise of judgment and discretion that is the clearest guidepost to appellate courts. *See Muthig v. Brant Point Nantucket, Inc.*, 838 F.2d 600, 603 (1st Cir.1988). Since the imposition of sanctions will usually require a intensive inquiry into the factual circumstances surrounding an alleged violation, "[t]he trial judge is in the best position to review [those] circumstances and render an informed judgment...." *Thomas*, 836 F.2d at 873. Thus, while we acknowledge the mandatory language of Rule 11,[13] we cannot escape the fact that at its core imposition of sanctions is "a judgment call." *FDIC*, 847 F.2d at 443 (citing *In re Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir.1987). We believe that judgment is one best left to the district judge whose "familiarity with the case, parties, and counsel ... we cannot have." *O'Connell*, 812 F.2d at 395. We feel this standard will be true to Rule 11's goals of "streamlin[ing] the litigation process" and deterring abusive tactics while not chilling innovative advocacy. Fed.R.Civ.P. 11 advisory committee's note. We now turn to the merits of Combined's appeal.

### B. Kale's Procedural Shortcomings.

Combined argues that Kale's filing of a facially time-barred complaint and his continued prosecution of the claim even after the untimeliness was revealed to him warrant sanctions. It asserts that Rule 11 requires an attorney to undertake an investigation of his claims before making any filings. Since a rudimentary examination of the ADEA would have revealed that Kale's complaint was time-barred, Combined concludes that Kale's attorney has transgressed the Rule 11 standards. We disagree.

Combined is correct in asserting that the new Rule 11 imposes a duty on counsel to investigate their clients' claims before making any filings and to reassess them throughout the litigation. *See Shrock v. Altru Nurses Registry*, 810 F.2d 658, 661 (7th Cir.1987); *Woodfork By And Through Houston v. Gavin*, 105 F.R.D. 100, 104 (N.D.Miss.1985); Fed.R.Civ.P. 11 advisory committee's note. It is also correct that the standard to be applied to filings in light of that requirement is one of objective reasonableness under the circumstances existing at the time. *See Donaldson*, 819 F.2d at 1556; *Thomas*, 836 F.2d at 873. It is in the application of these principles to the facts of this case, however, where our analysis diverges from that of Combined.

We believe, as did the district court, that while Kale's complaint was facially time-barred, his argument for equitable modification removed any element of frivolousness regarding that issue. Although the plaintiff was asking for a more liberal equitable tolling doctrine than exists in any other circuits, the fact that there was no First Circuit precedent on point allowed such an argument. Indeed, even if

---

13. One court has suggested that the mandatory language is best interpreted as requiring sanctions whenever the Rule is violated, but that *whether* the Rule has been violated is up to the discretion of the district judge. *See O'Connell v. Champion*, 812 F.2d 393, 395 (8th Cir.1987).

we had previously decided in favor of a conservative equitable tolling doctrine, Kale's argument might have qualified as a "good faith argument for the extension, modification, or reversal of existing law...." Fed.R.Civ.P. 11. *Cf. Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1542 (9th Cir.1986) ("A lawyer should not be able to proceed with impunity in real or feigned ignorance of authorities which render his argument meritless.").

What Combined appears to be arguing is that Kale's attorney had no knowledge of the doctrine of equitable tolling *at the time he filed the complaint,* and that, therefore, his lack of timely and reasonable investigation should trigger Rule 11 sanctions. *See Alvarado–Morales v. Digital Equipment Corp.*, 843 F.2d 613, 618 (1st Cir.1988). At first blush, this argument has some appeal. Kale's original complaint fails to mention the doctrine of equitable tolling, and it is arguable that Kale's attorney learned of the equitable tolling doctrine when doing research well after the initial filing of the complaint. Whether an equitable tolling argument was possible under the circumstances, Combined contends, is immaterial to a Rule 11 inquiry; where an attorney has failed to properly investigate facts and legal theories and then files an otherwise time-barred complaint, there are grounds for sanctions.

We believe the objective nature of the inquiry requirement of Rule 11 defeats Combined's argument. Sanctions may be imposed where, "after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." *Eastway Construction Corp.*, 762 F.2d at 254. Looking at this case objectively, then, a reasonable inquiry would have revealed the possibility of making an equitable tolling argument such as the one proffered by Kale. Since the subjective knowledge of the attorney is no longer the relevant inquiry under Rule 11, we agree with the district court that Kale's equitable tolling argument was objectively sound. We also note that if we were to agree with Combined's view, we would be telling Kale that his argument did have some merit but that since he was not fully aware of that fact at the initial filing, he has violated Rule 11.

It is easy to imagine a myriad number of satellite litigations arising if this were our holding. *See* Fed.R.Civ.P. 11 advisory committee's note (counselling against such atomization). Anytime an attorney did not fully flesh out an argument he would be subject to a charge that he had not engaged in a reasonable investigation. While this is proper where an inquiry would have revealed the lack of merit in an argument, it is not where that inquiry would have instead *bolstered* counsel's contentions. Sanctions should not be imposed where a "plausible good faith argument can be made...." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 833 (9th Cir.1986).

### C. *Kale's Substantive Shortcomings.*

Combined next argues that sanctions should be imposed on Kale for his continued litigation of a claim that lacks substantive merit. It contends that "while appellant may have pleaded the elements of a claim for age discrimination, the facts as revealed by discovery, particularly appellant's [Kale's] deposition, show that there was no evidence whatsoever supporting an inference of unlawful age discrimination by Combined." In other words, Combined believes Kale has failed both to establish a prima facie case of age discrimination and to demonstrate that Combined's proffered reasons for his dismissal were pretexts for what was in fact a discriminatory firing. For the reasons that follow, we do not find that the district court abused its discretion in refusing to impose Rule 11 sanctions on this ground.

To recover under the ADEA, a plaintiff must show that age was "a determining factor" in his dismissal. *See Cuddy v. Carmen*, 694 F.2d 853, 856–57 & n. 19 (D.C.Cir.1982); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013–14, 1019 (1st Cir.1979). When the plaintiff makes a prima facie

case, an inference arises that age was a determining factor. *See id.* The standard for establishing a prima facie case of age discrimination is well settled in this circuit. A plaintiff must show:

> that he was in the protected age group [40–70], that he was performing his job at a level that met his employer's legitimate expectations, that he nevertheless was fired, and that [the employer] sought someone to perform the same work after he left.

*Loeb,* 600 F.2d at 1014; *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (establishing virtually same test for Title VII cases); *Johnson v. Allyn & Bacon, Inc.,* 731 F.2d at 70–71 (applying same test to cases of sex discrimination). The burden next shifts to the employer to produce, i.e., simply state, a legitimate, non-discriminatory basis for the plaintiff's firing. *See Loeb,* 600 F.2d at 1011. Plaintiff then has the final burden of persuading the court that the employer's stated basis for his firing is actually a pretext designed to cover-up a discriminatory dismissal. *See id.* at 1011–12.

■ In the case at bar, Combined alleges that Kale has satisfied only the age prong of the prima facie case. Combined states that it did not hire a younger employee to replace Kale and that Kale's own deposition admits that he had been criticized for his work performance for several years. Neither of these assertions negates plaintiff's prima facie case. First, there is no requirement that plaintiff show a younger employee was hired to replace him. It is enough for plaintiff to show that the employer sought some form of replacement performance, which would demonstrate its "continued need for the same

services and skills." *Id.* at 1013. Plaintiff has met this burden here, since Combined revealed in its answers to one of Kale's interrogatories that "[p]laintiff's job funcions were absorbed by several different employees of defendant." [14]

Second, while it is true Kale admitted in his deposition that he had been criticized for inadequate performance for years, his affidavit counters that these criticisms were "malicious and false, blaming him for others' delays." In essence plaintiff is arguing that he met his employer's "legitimate expectations" of performance but that his efforts were met with illegitimate condemnation. We believe such a contention would sustain a prima facie case by plaintiff.[15]

■ A closer question is whether Kale's allegation of improper criticism and pretext will overcome the defendant's articulation of a legitimate non-discriminatory basis for the dismissal. It is true that a mere allegation of pretext, with little or no factual support, cannot easily overcome a valid reason proffered for a firing. *See Selsor v. Callaghan & Co.,* 609 F.Supp. 1003, 1008–10 (D.Ill.1985). Yet we are mindful of the lower court's words in this case that in age discrimination cases that turn on the question of pretext, "the defendant's intent is difficult to establish except through discovery; imposing sanctions in cases such as this runs the risk of chilling meritorious litigation." [16] We agree. The issue here is not whether Kale's assertions are weighty enough to survive a summary judgment motion, *see Selsor,* 609 F.Supp. at 1010 & n. 8 (affirming entry of summary judgment under similar facts), but whether they are so objectively unsound as to warrant sanctions. We find that the district court did

---

**14.** It is not necessary that the replacement be new to the company nor specifically designated as a replacement for the fired employee. *See Loeb v. Textron, Inc.,* 600 F.2d 1003, 1013 n. 11 (1st Cir.1979).

**15.** This is not a case such as *Harb v. United Parcel Service, Inc.,* 3 Fed.R.Serv.3d 1023 (S.D. N.Y.1985), where the plaintiff's complaint and deposition testimony were so contradictory that one could not have believed that "the complaint

was drafted with a belief that it had a basis in fact or law." *Id.* at 1029.

**16.** Similarly, in *Mohammed v. Union Carbide Corp.,* 606 F.Supp. 252, 261–62 (E.D.Mich.1985), the court relaxed the reasonable inquiry standard of Rule 11 for cases involving claims of monopolization and conspiracy due to the difficulty of obtaining necessary documents and materials, which were in defendant's possession.

not abuse its discretion in refusing to impose sanctions.

## IV. COMBINED'S MOTION FOR APPELLATE SANCTIONS

■ Combined's final argument is that because Kale has vexatiously multiplied the proceedings in this case by pursuing a frivolous appeal we should award sanctions under Fed.R.App.P. 38 [17] and 28 U.S.C. §§ 1912 [18] & 1927.[19] We agree with Combined that the fact that sanctions may have been uncalled for at the district level should not deter an appellate court from sanctioning the appeal in appropriate cases. *See Trustees of Boston University v. Boston University Chapter, American Association of University Professors*, 746 F.2d 924, 927 (1st Cir.1984) (per curiam). We find, however, that appellate sanctions are not warranted.

■ "Although § 1912 and Rule 38 differ slightly—the former speaking of 'delay' while the latter concerns 'frivolous' appeals —courts have typically ignored this distinction and imposed sanctions under the rule *and* the statute." *Natasha, Inc. v. Evita Marine Charters, Inc.*, 763 F.2d 468, 472 (1st Cir.1985). Thus, we have held that the standard for imposing such sanctions is whether the appeal is frivolous, i.e., where the " 'result is obvious,' or the arguments are 'wholly without merit.' " *Id.* (quoting *NLRB v. Catalina Yachts*, 679 F.2d 180, 182 (9th Cir.1982) (citations omitted)); *see Ochoa Realty Corp. v. Faria*, 815 F.2d 812, 817–18 (1st Cir.1987); *Trustees of Boston University*, 746 F.2d at 927. Based upon this standard, we cannot say that Kale's argument, asking us to adopt a liberal equitable tolling doctrine for this circuit, was frivolous; nor was his pretext argument totally without merit. Sanctions are thus inappropriate.

Since we do not find Kale's appeal frivolous, *a fortiori*, his attorney's actions cannot be seen as unreasonable or vexatious under the standard imposed by § 1927.[20]

## V. CONCLUSION

For the foregoing reasons, we affirm both the district court's grant of summary judgment in favor of defendant Combined and its denial of Rule 11 sanctions. We also refuse to impose appellate sanctions upon the plaintiff.

Combined is entitled to costs in plaintiff's appeal; plaintiff is awarded costs in Combined's cross-appeal.

---

17. The Rule states: "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs." Fed.R.App.P. 38.

18. The statute reads: "Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs." 28 U.S.C. § 1912.

19. The section provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.
28 U.S.C. § 1927.

20. While an attorney may act unreasonably or vexatiously even in a meritorious appeal, no evidence of such actions was offered here.